

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD77540 |
| | ) | |
| HENRY R. RAMIREZ, | ) | Opinion filed: |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE ROBERT M. SCHIEBER, JUDGE**

Before Division One:  Cynthia L. Martin, Presiding Judge,
Joseph M. Ellis, Judge and James E. Welsh, Judge

Appellant Henry Ramirez appeals from his convictions of one count of murder in the second degree, § 565.021,[1] two counts of assault in the first degree, § 565.050, and three counts of armed criminal action, § 571.015.  Appellant contends that the trial court erred in refusing to instruct on the lesser-included instructions of voluntary manslaughter, involuntary manslaughter, and assault in the second degree.  For the following reasons, the judgment is vacated.

On April 5, 2012, the police responded to the home of Roy Willis in Kansas City, Missouri.  Upon arrival, the police came in contact with Roy and his adult son, Justin

---

[1] Unless otherwise noted, all statutory citations are to RSMo 2000 as updated through the 2012 Cumulative Supplement.

Willis, both of whom had sustained multiple stab wounds. Upon inspection of the home, the police discovered the body of Tom Willis, Roy's brother. Tom had also sustained multiple stab wounds and was pronounced dead at the scene. The police recovered two knives that were on a desk in the kitchen. One of the knives tested positive for blood. Roy and Justin identified Appellant as the perpetrator.

The police arrested Appellant when he returned to the Willis home later that evening. The coveralls Appellant was wearing contained bloodstains that were later determined to match Justin's and Roy's DNA. Appellant was subsequently charged with one count of second-degree murder, two counts of first-degree assault, and three counts of armed criminal action.

In 2014, the case proceeded to trial. The State presented the following evidence during its case-in-chief. On the afternoon of April 5, 2012, Roy, Justin, and Tom were at the Willis home. Roy was sitting in the garage when Appellant approached him and asked to speak with Justin. Appellant and Justin grew up together, and the Willises considered Appellant to be family. Roy yelled to Justin, who was upstairs in his bedroom, that Appellant wanted to talk with him. Roy then escorted Appellant up the basement steps and into the kitchen. While in the kitchen, Appellant said something to Roy. When Roy turned to face Appellant, Appellant began stabbing Roy with a knife.

Roy fled from Appellant, ran into the bathroom, and attempted to shut the door. Appellant, however, was able to enter the bathroom and continued stabbing Roy, who fell backwards into the bathtub. Justin then came into the bathroom and pulled Appellant off of Roy. When Appellant began attacking Justin, Justin ran out of the bathroom, and Appellant followed. When Appellant and Justin left the bathroom, Roy

2

exited the home, yelled for help, and called 911. As he was exiting the home, Roy observed Tom lying on the living room floor in a puddle of blood.

Appellant's brother, Billy Burns, was at a home nearby when he heard cries for help. He started in the direction of the Willis home and saw Appellant kicking something in the garage. When Burns got closer, Appellant ran back upstairs into the Willis home. Burns entered the garage and observed Justin severely injured on the garage floor. He went upstairs, found Appellant in the kitchen, and asked: "What the hell is going on?" Appellant then ran back downstairs and exited the Willis home without responding to Burns.

Roy and Justin were transported to local hospitals. As a result of the stabbing, Roy suffered injuries to his lung, neck, stomach, and small intestine. Justin sustained stab wounds to his leg, back, and carotid artery. Tom's autopsy established that he had been stabbed five times, including once in the carotid artery. All of Tom's five wounds were considered fatal injuries.

After the close of the State's evidence, Appellant testified on his own behalf and claimed self-defense. Appellant explained that, on April 4, 2014, he went to the emergency room and received a prescription for Percocet after he hyper-extended his elbow. When he entered the Willis home on April 5, 2014, he had a conversation with Justin about the injury and his prescription for Percocet. Justin asked for some Percocet, but Appellant refused to give him any. At the time, both Justin and Roy were seeking treatment for their addictions to pain medications.

Appellant went on to testify that when he refused to give Justin the Percocet, Justin punched him in the face, causing him to fall backward. Justin, Tom, and Roy

proceeded to attack and kick him. Appellant then saw Roy pull what Appellant believed to be a knife from his hip or pocket. Fearing for his life, Appellant responded by pulling his pocketknife and using it to defend himself as he got up off the floor. Appellant explained that the struggle continued throughout the house and that, if able, he would have left the home.

At the instruction conference, Appellant requested that the jury be instructed on the lesser-included offenses of voluntary manslaughter, involuntary manslaughter, and second-degree assault. The trial court refused the proffered instructions on the basis that there was no evidence to support the submission of instructions on the lesser-included offenses. The jury was subsequently instructed on second-degree murder, first-degree assault, armed criminal action, and self-defense.

The jury found Appellant guilty as charged. The trial court sentenced Appellant to terms of life imprisonment for the second-degree murder count and each of the two first-degree assault counts and to ten years on each of the three armed criminal action counts. The trial court ordered all sentences to run concurrently except for one of the life sentences, which the court ordered to run consecutive to the other four sentences. Appellant subsequently filed a motion for new trial which included claims related to the trial court's failure to instruct on the lesser-included offenses. The trial court denied Appellant's motion for new trial. Appellant raises two points of error on appeal.

In his first point, Appellant contends that the trial court erred in refusing to instruct the jury on the lesser-included offenses of voluntary and involuntary manslaughter. We review "*de novo* a trial court's decision whether to give a requested jury instruction under section 556.046." **State v. Jackson**, 433 S.W.3d 390, 395 (Mo. banc 2014). "[I]f

4

the statutory requirements for giving such an instruction are met, a failure to give a requested instruction is reversible error." *Id*.

Voluntary manslaughter and involuntary manslaughter are lesser-included offenses of murder in the second degree. **§ 565.025.2(2)**. Pursuant to § 556.046, a trial court is obligated to give an instruction on a lesser-included offense when: (1) "a party timely requests the instruction"; (2) "there is a basis in the evidence for acquitting the defendant of the charged offense"; and (3) "there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *Jackson*, 433 S.W.3d at 396. "Doubts concerning whether to instruct on a lesser included offense should be resolved in favor of including the instruction, leaving it to the jury to decide." *Id*. at 399 (internal quotation omitted).

The State concedes that Appellant timely requested the instructions on voluntary and involuntary manslaughter. The State further concedes that, because the jury has the right to believe or disbelieve all or any part of the evidence, *id*., there was a basis for the jury to acquit Appellant of the charged offense of murder in the second degree. It argues, however, that there was no basis in the evidence for convicting Appellant of the lesser-included offenses of voluntary manslaughter and involuntary manslaughter.

We begin by considering whether the trial court erred in failing to instruct on the lesser-included offense of involuntary manslaughter. Appellant argues that the evidence presented at trial provided a basis for acquitting him of second-degree murder and convicting him of involuntary manslaughter. In response, the State contends that, while there is a basis for acquitting Appellant of second-degree murder, there is no basis in the evidence to support an inference that Appellant acted recklessly, so as to

5

support a conviction for involuntary manslaughter, when he stabbed Tom five times in vital areas of the body.  Accordingly, the issue presented is whether there is a basis in the evidence for convicting Appellant of involuntary manslaughter.

"[T]he jury's right to disbelieve all or any part of the evidence, and its right to refuse to draw any needed inference, is a sufficient basis in the evidence to justify giving any lesser included offense instruction when the offenses are separated only by one differential element for which the state bears the burden of proof."  *Jackson*, 433 S.W.3d at 401.  "Lesser-included offenses that are separated from the greater offense by one differential element for which the state bears the burden of proof are referred to as 'nested' lesser-included offenses."  *State v. Randle*, No. SC94646, 2015 Mo. LEXIS 146, at *4-5 (Mo. banc August 4, 2015).  "Nested" lesser-included offenses are "those [offenses] comprised of a subset of the elements of the charged offense."  *Jackson*, 433 S.W.3d at 404.  "Consequently, it is *impossible to commit* the greater without *necessarily committing* the lesser."  *Randle*, 2015 Mo. LEXIS 146, at *5 (emphasis in original, internal quotation omitted).  "A defendant is entitled, upon proper request, to an instruction on a 'nested' lesser-included offense and, therefore, does not have to introduce affirmative evidence or 'cast doubt' over the state's evidence in any way."  *State v. Roberts*, No. SC94711, 2015 Mo. LEXIS 147, at *4-5 (Mo. banc August 4, 2015).

As charged in this case, "[a] person commits the crime of murder in the second degree if he [or she] . . . [k]nowingly causes the death of another person[.]"[2]  **§ 565.021.1(1)**.  In contrast, "[a] person commits the crime of involuntary manslaughter in

---

[2] "A person 'acts knowingly' . . . [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result."  **§ 562.016.3(2)**.

6

the first degree if he or she . . . [r]ecklessly causes the death of another person."[3] **§ 565.024.1(1)**. Thus, under the circumstances of this case, the sole differential element between second-degree murder and involuntary manslaughter is the culpable mental state, requiring the State to prove that the defendant acted with a different intent with respect to causing the victim's death.

Although "knowingly" and "recklessly" constitute different mental states, Missouri has statutorily "graded" its culpable mental states. *See* **§ 562.021.4**. Each mental state is included in the higher mental states. **§ 562.021.4**. In particular, as pertinent to this case, "Section 562.021.4 provides that, '[w]hen recklessness suffices to establish a culpable mental state, it is also established if a person acts purposefully or knowingly.'" *Randle*, 2015 Mo. LEXIS 146, at *5. Therefore, where the evidence is sufficient to establish a person acted purposely or knowingly, there is no need for additional proof that the defendant acted recklessly. *Id*. at *4-5.

The offenses of second-degree murder and involuntary manslaughter require the State to prove that the defendant acted with a different intent with respect to causing the victim's death. Therefore, different mental states are required to prove the separate offenses of second-degree murder and involuntary manslaughter, and "these different *mens rea* requirements are differential elements on which the State bears the burden of proof." *Id*. at *6-7. The remaining element, causing the death of the victim, remains the same. Accordingly, involuntary manslaughter is a "nested" lesser-included offense of second-degree murder.[4]

---

[3] "A person 'acts recklessly' . . . when he consciously disregards a substantial and unjustifiable risk that circumstances exists or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." **§ 562.016.4**.
[4] This Court reached this same conclusion in ***State v. Sanders***, No. WD76452, 2015 Mo. App. LEXIS

In the case at bar, both parties concede that the record contained sufficient evidence to prove the elements of second-degree murder. The presence of sufficient evidence to establish that Appellant committed second-degree murder by knowingly causing the victim's death necessarily means that there was also a basis in the evidence for the jury to convict Appellant of involuntary manslaughter by recklessly causing his death. *See Roberts*, 2015 Mo. LEXIS 147, at *5 ("[P]roof that Mr. Roberts committed second-degree domestic assault by 'knowingly' causing physical injury to A.A. necessarily means there was also a basis in the evidence for the jury to convict Mr. Roberts of third-degree domestic assault by 'recklessly' injuring A.A."); *Randle*, 2015 Mo. LEXIS 146, at *7 ("[I]f Mr. Randle 'knowingly' inflicted physical injury, he necessarily engaged in conduct sufficient to establish that he 'recklessly' inflicted physical injury."). Accordingly, upon Appellant's request, the trial court was obligated to submit an instruction on the "nested" lesser-included offense of involuntary manslaughter. It committed reversible error in refusing to so instruct the jury.

Because Appellant's murder conviction and sentence must be vacated on this basis, we need not address whether the trial court also erred in refusing to give a voluntary manslaughter instruction. That claim of error is complicated by the fact that the instruction requested by Appellant did not conform to the applicable MAI-CR instruction. We note, however, that, if the same evidence is presented on retrial and a voluntary manslaughter instruction conforming to MAI-CR is requested, the trial court should give the voluntary manslaughter instruction as the evidence presented at the

_____

117, at *4 (Mo. App. W.D. Feb. 3, 2015), which has been transferred to the Missouri Supreme Court.

original trial was sufficient to inject the issue of sudden passion arising from adequate cause into the case.[5]  Point granted.

In his second point, Appellant contends that the trial court erred in refusing to instruct on the lesser-included offense of assault in the second degree with regard to the two first-degree assault charges.  Again, we review "*de novo* a trial court's decision whether to give a requested jury instruction under section 556.046." *Jackson*, 433 S.W.3d at 395.  "[I]f the statutory requirements for giving such an instruction are met, a failure to give a requested instruction is reversible error." *Id*.

Assault in the second degree is a lesser-included offense of assault in the first degree.  *State v. Jefferson*, 414 S.W.3d 82, 86 (Mo. App. E.D. 2013).  Pursuant to § 556.046, a trial court is obligated to give an instruction on a lesser-included offense when: (1) "a party timely requests the instruction"; (2) "there is a basis in the evidence for acquitting the defendant of the charged offense"; and (3) "there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *Jackson*, 433 S.W.3d at 396.  "Doubts concerning whether to instruct on a lesser included offense should be resolved in favor of including the instruction, leaving it to the jury to decide." *Id*. at 399 (internal quotation omitted).

---

[5] Appellant testified that Justin was persistent about asking for the Percocet and eventually hit Appellant in the face after Appellant refused to give him the pills.  Appellant explained that he fell back into the living room and that Justin, Tom, and Roy proceeded to attack and kick him.  Appellant testified that he then saw Roy pull a knife from his pocket.  Appellant tried his "best to get to [his] feet" and pulled the knife out to "defend" himself.  Appellant testified that he was in fear and that he had not gone to the Willises' home expecting to get into a fight.   He further stated that he was not paying attention to how many times or where he stabbed the victims, he was stabbing "wherever [he] could get them to get them off [him]." Testimony from Burns indicated that Appellant appeared "shocked and traumatized" and was "white as a ghost" following the incident.

The jury could accept or believe any of Appellant's testimony.  *State v. Redmond*, 937 S.W.2d 205, 209 (Mo. banc 1996); *see also Jackson*, 433 S.W.3d at 399.  The jury, therefore, could believe that, as a result of the "unexpected encounter" with the Willises, Appellant was driven by fear, not reason, when he stabbed Tom.  Accordingly, the evidence presented was sufficient to inject the issue of sudden passion arising from adequate cause.

9

The State concedes that there was a timely request for instruction on the lesser-included offense of second-degree assault and that there was a basis to acquit Appellant of the charged offense of assault in the first degree. Nevertheless, the State again avers that Appellant's actions transcend recklessness and, thus, there is no basis in the evidence to convict Appellant of the lesser-included offense of assault in the second degree. We disagree.

As charged in this case, assault in the second degree is a nested lesser-included offense of assault in the first degree. "A person commits the crime of assault in the first degree if he [or she] attempts to kill or *knowingly* causes or attempts to cause serious physical injury to another person." **§ 565.050.1** (emphasis added). "A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step toward the commission of the offense." *§ 564.011*.

In this case, the jury was instructed to find the defendant guilty of assault in the first degree if it found that Appellant attempted to kill or cause serious physical injury to Willis by stabbing him and did, in fact, cause serious physical injury to Willis. Accordingly, the jury was required to find Appellant guilty if it found that he purposely stabbed Willis intending to kill or cause serious physical injury to him and thereby caused serious physical injury to him.[6]

---

[6] For whatever reason, the State chose not to instruct the jury to find the defendant guilty if it found that he had knowingly caused serious physical injury to Willis and to instead instruct the jury to find him guilty if it found that he purposely tried to cause serious physical injury to Willis by stabbing him and did, in fact, cause serious physical injury to him. As it relates to this case, however, this is a difference without distinction. Whether the requisite culpable mental state was purposely or knowingly, the result in this case is the same.

"A person commits the crime of assault in the second degree if he [or she] . . . *[r]ecklessly* causes serious physical injury to another person."  **§ 565.060.1(3)** (emphasis added).  Therefore, under the circumstances of this case, the differential element between first-degree assault and second-degree assault is whether Appellant acted purposely or recklessly in causing serious physical injury to Willis by stabbing him.

As previously explained, Missouri has graded its culpable mental states such that each culpable mental state is included in the higher culpable mental states.  **§ 562.021.4**.  "When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposefully or knowingly."  **§ 562.021.4**.  Therefore, when evidence is sufficient to establish that a defendant acted "purposely" or "knowingly," it is automatically sufficient to establish that a defendant "recklessly" acted.  **Randle**, 2015 Mo. LEXIS 146, at *4-5.

Thus, it follows that, as charged in this case, second-degree assault is a nested lesser-included offense of first-degree assault in that it is comprised of a subset of the elements of first-degree assault.  The State does not refute that there was sufficient evidence to convict Appellant of the offense of first-degree assault.  Because there was sufficient evidence to prove the elements of the greater offense of first-degree assault, there was, necessarily, sufficient evidence to prove the nested lesser-included offense of second-degree assault.  When a defendant requests an instruction for a nested lesser-included offense, that instruction must be given.  **Jackson**, 433 S.W.3d at 404. The trial court, therefore, committed reversible error by failing to instruct on the nested lesser-included offense of assault in the second degree.  Point granted.

For the foregoing reasons, Appellant's convictions for second-degree murder and first-degree assault are vacated. Because his convictions for armed criminal action are based upon his murder and assault convictions, they are also vacated.

The judgment is vacated, and the case is remanded.

_____
Joseph M. Ellis, Judge

All concur.