STATE of Missouri, Respondent,

v.

Christopher M. SANDERS, Appellant.

No. SC 94865

Supreme Court of Missouri,
en banc.

Opinion issued July 11, 2017

Sanders was represented by Susan L. Hogan of the public defender's office in Kansas City, (816) 889-7699.

The state was represented by Shaun J. Mackelprang of the attorney general's office in Jefferson City, (573) 751-3321.

Patricia Breckenridge, judge

Christopher Sanders is serving a sentence of life imprisonment for the murder of Sherilyn Hill. Mr. Sanders appeals a judgment convicting him of one count of murder in the second degree, section 565.021.1,[1] claiming the trial court committed reversible error by refusing to instruct the jury on the lesser included offense of involuntary manslaughter. Consistent with the indictment, the trial court instructed the jury it must find Mr. Sanders guilty of second degree murder if the jury found beyond a reasonable doubt that Mr. Sanders knowingly caused Ms. Hill's death by "kicking her and strangling her." The trial court also instructed the jury on voluntary manslaughter, which, like the second degree murder instruction, required the jury to determine whether Mr. Sanders caused Ms. Hill's death by "kicking her and strangling her." The trial court refused Mr. Sanders' requested instruction on the lesser included offense of involuntary man-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

slaughter, which would have required the jury to determine whether Mr. Sanders "recklessly" caused Ms. Hill's death by "kicking her." The trial court did not err by refusing to instruct the jury on involuntary manslaughter because Mr. Sanders' proffered involuntary manslaughter instruction impermissibly modified the charged offense by requiring the jury to find he caused Ms. Hill's death by kicking her as opposed to kicking and strangling her. The judgment is affirmed.

### Factual and Procedural Background

On December 7, 2011, a maintenance worker discovered Ms. Hill's body under the stairwell of a motel in Kansas City, Missouri. A sheet and towel were wrapped around her neck and the lower part of her face. A medical examiner determined the cause of death was blunt force trauma to the head and strangulation.

An investigation revealed that, "around Thanksgiving," Mr. Sanders rented a room at the motel and shared it with Ms. Hill and Zonia Brown. Ms. Brown told police Mr. Sanders and Ms. Hill were involved in a violent fight at the motel. The police arrested and questioned Mr. Sanders. Mr. Sanders denied there was an altercation in the motel room. A search of Mr. Sanders' home revealed Ms. Hill's blood on Mr. Sanders' boots. The state charged Mr. Sanders with murder in the second degree for knowingly causing Ms. Hill's death "by kicking her and strangulating her."

At trial, Ms. Brown testified she and Ms. Hill agreed to have sex with Mr. Sanders in exchange for crack cocaine. An argument ensued when Mr. Sanders provided what Ms. Brown and Ms. Hill believed was an insufficient quantity of crack cocaine. On three separate occasions, Ms. Hill pointed a knife at Mr. Sanders and demanded more crack cocaine. After Ms. Hill left her knife in the bathroom, Mr. Sand-ers knocked her down and repeatedly kicked her in the head until she lay lifeless on the floor. When asked what Ms. Hill was doing during the time she was being kicked, Ms. Brown stated, "She was fighting for her life. She was trying to get up but she—every time she tried to get up, he would kick her." Ms. Brown stated she left the room as Mr. Sanders wrapped a bed sheet around Ms. Hill's head.

Mr. Sanders' trial testimony offered a different version of events. Mr. Sanders testified Ms. Hill pulled out a knife, stuck it in his face, and demanded more crack cocaine. Mr. Sanders declined to give her more crack, and she put the knife back in her pocket. Mr. Sanders testified Ms. Hill approached him from behind, held her knife to his throat, cut him, and said she would "just take" Mr. Sanders' belongings. Ms. Hill then took Mr. Sanders' wallet, threw it to Ms. Brown, and said, "Get his money." Mr. Sanders grabbed her arm and hit her in the head. Ms. Hill swung at Mr. Sanders with the knife. Mr. Sanders testified he believed she was going to stab him. He elbowed Ms. Hill in the head as hard as he could. As she staggered backwards, she kept swinging the knife. Mr. Sanders kicked Ms. Hill in the chest and hit her in the mouth, causing her to fall backward and hit her head on the sink. Mr. Sanders testified Ms. Hill tried to reach for the knife, so he tried to kick the knife away but accidentally kicked her in the face, causing her to flip over and strike her head against the wall. Ms. Hill was rendered unconscious. Mr. Sanders denied he attempted to wrap her in a bedsheet but admitted he carried her out of the room, placed her on the stairway landing, and told the motel manager there was a woman passed out on the stairway. Mr. Sand-ers testified he left the motel and, when he later returned to his room, Ms. Hill was no

longer on the stairwell, so he assumed she left.

The trial court instructed the jury on second degree murder and voluntary manslaughter. The verdict director for second degree murder instructed the jury to determine whether Mr. Sanders knowingly caused Ms. Hill's death by kicking her and strangling her and whether he did so without the influence of sudden passion and not in lawful self-defense. The verdict director for voluntary manslaughter instructed the jury to determine whether Mr. Sanders knowingly caused Ms. Hill's death by kicking her and strangling her and that he did not act in lawful self-defense.[2] The court also instructed the jury on self-defense. The trial court refused to submit Mr. Sanders' proffered involuntary manslaughter instruction, which would have required the jury to determine whether he recklessly caused Ms. Hill's death by kicking her. Unlike the second degree murder instruction, Mr. Sanders' proffered involuntary manslaughter instruction did not require the jury to determine whether he caused Ms. Hill's death by strangulation.

The jury found Mr. Sanders guilty of second degree murder. The trial court sentenced Mr. Sanders to life imprisonment. Mr. Sanders appeals. This Court granted transfer following an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

Mr. Sanders' sole point on appeal asserts the trial court committed reversible error by refusing to instruct the jury on the nested lesser included offense of involuntary manslaughter. Mr. Sanders asserts the instructional error is presumed prejudicial and the trial court's erroneous refusal to instruct the jury on involuntary manslaughter prevented the jury from considering whether he recklessly caused Ms. Hill's death. Mr. Sanders also asserts the jury could have found he recklessly used excessive force when he acted in self-defense.

## Standard of Review

■■■■ The trial court's rejection of Mr. Sanders' proffered involuntary manslaughter instruction is subject to *de novo* review. *State v. Jackson*, 433 S.W.3d 390, 395 (Mo. banc 2014). Instructional error requires reversal when the error is "so prejudicial that it deprived the defendant of a fair trial." *State v. Zetina–Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016) (quoting *State v. Nash*, 339 S.W.3d 500, 511-12 (Mo. banc 2011)). Prejudice is presumed when a trial court fails to give a requested instruction to submit a nested lesser included offense. *Jackson*, 433 S.W.3d at 395 n.4 (citing *State v. Redmond*, 937 S.W.2d 205, 210 (Mo. banc 1996)). Nonetheless, a trial court does not commit instructional error by rejecting an improper jury instruction for the lesser included offense. *State v. Blurton*, 484 S.W.3d 758, 766 (Mo. banc 2016). The "trial court's rejection of a proffered instruction should be affirmed '[i]f the trial court was correct ... for any reason[.]'" *Id.* (quoting *State v. White*, 936 S.W.2d 793, 794 (Mo. banc 1997)); *see also State v. Bradley*, 811 S.W.2d 379, 383 (Mo. banc 1991) (judgment will be affirmed on any sustainable ground even if the stated reason for a circuit court's ruling is incorrect).

---

**2.** The verdict directors for second degree murder and involuntary manslaughter required the jury to determine whether Mr. Sanders was "aware his conduct was practically certain to cause Victim's death." "A person 'acts knowingly' ... [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." Section 562.016.3(2). Therefore, the verdict directors for second degree murder and involuntary manslaughter required the jury to determine whether Mr. Sanders acted "knowingly."

## The Circuit Court Did Not Commit Instructional Error

Section 556.046, RSMo Supp. 2002, defines the trial court's obligation to instruct on lesser included offenses. In pertinent part, section 556.046.2, RSMo Supp. 2002, provides, "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Section 556.046.3, RSMo Supp. 2002, further provides:

The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense.

Collectively, sections 556.046.2 and 556.046.3, RSMo Supp. 2002, obligate a trial court to instruct the jury on a "lesser included offense" when: (1) "a party timely requests the instruction," (2) "there is a basis in the evidence for acquitting the defendant of the charged offense," and (3) "there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *Jackson*, 433 S.W.3d at 396.

An offense is a lesser included offense when:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It is specifically denominated by statute as a lesser degree of the offense charged; or

(3) It consist of an attempt to commit the offense charged or to commit an offense otherwise included therein.

Section 556.046.1, RSMo Supp. 2002. The lesser included offense in subparagraph (1) of section 556.046.1, RSMo Supp. 2002, is called a "nested lesser included offense." A nested lesser included offense consists of a subset of the elements of the greater offense and is separated from the greater offense by a differential element for which the state bears the burden of proof. *Jackson*, 433 S.W.3d at 404. It is, therefore, *"impossible to commit* the greater without *necessarily committing"* the nested lesser included offense. *Id.* (emphasis in original).

When a defendant timely requests a proper instruction on a "nested" lesser included offense, the trial court is obligated to submit the instruction even if the defendant introduced no evidence and did not dispute the state's evidence. *Id.* at 401-02; *State v. Pierce*, 433 S.W.3d 424, 433 (Mo. banc 2014). Further, "[u]nless waived, the right to trial by jury means that the jury—and only the jury—will decide what the evidence does and does not prove beyond a reasonable doubt." *Jackson*, 433 S.W.3d at 402. Consequently, the jury's right to disbelieve the evidence or refuse to draw inferences necessary to sustain a conviction is "a sufficient basis in the evidence to justify giving any [nested] lesser included offense instruction." *Id.* at 401.

Involuntary manslaughter, as defined by section 565.024.1(1), is a nested lesser included offense of second degree murder as defined by section 565.021.1(1). *State v. Ramirez*, 479 S.W.3d 640, 645 (Mo. App. 2015). In pertinent part, section 565.021.1(1) provides, "A person commits the crime of murder in the second degree if he [or she] ... [k]nowingly causes the death of another person." Section 565.024.1(1) provides, "A person commits the crime of involuntary manslaughter in the first degree if he [or she] ... [r]eck-

lessly causes the death of another person." The differential element distinguishing the two offenses is that second degree murder requires the state to prove the defendant acted "knowingly" instead of "recklessly." Section 562.021.4 provides, "When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposefully or knowingly." The fact that the culpable mental state of "recklessly" is, by statute, subsumed within the culpable mental state of "knowingly" means it was *"impossible* [for Mr. Sanders] *to commit* the greater [offense of second-degree murder] without *necessarily committing"* the nested lesser included offense of involuntary manslaughter. *Jackson,* 433 S.W.3d at 404 (emphasis in original). Therefore, as charged in this case, involuntary manslaughter is a "nested" lesser included offense of second degree murder, and the trial court was required to give a timely and properly requested instruction for involuntary manslaughter.

The record shows, however, that Mr. Sanders proffered an improperly worded involuntary manslaughter instruction. Section 556.046.1, RSMo Supp. 2002, provides, "A person may be convicted of an offense included in an *offense charged in the indictment* or information." (Emphasis added). Further, the full text of section 556.046.2, RSMo Supp. 2002, provides:

> The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of *the offense charged* and convicting him of the included offense. An offense is charged for purposes of this section if:
>
> (1) It is in an indictment or information; or
>
> (2) It is an offense submitted to the jury because there is a basis for a verdict acquitting the person of the offense charged and convicting the person of the included offense.

(Emphasis added).

The phrase "the offense charged" in section 556.046.2, RSMo Supp. 2002, refers back to the phrase "an offense charged in the indictment or information" as used in section 556.046.1, RSMo Supp. 2002. *State v. Hibler,* 5 S.W.3d 147, 150 (Mo. banc 1999). The fact section 556.046.2, RSMo Supp. 2002, refers back to the offense charged in the indictment or information means "the lesser crime must be included in the higher crime *with which the accused is specifically charged,* and that the averment of the indictment describing the manner in which the greater offense was committed must contain allegations essential to constitute a charge of the lesser, to sustain a conviction of the latter offense." *Id.* (quoting *State v. Smith,* 592 S.W.2d 165, 166 (Mo. banc 1979)). Section 556.046, RSMo Supp. 2002, is, therefore, consistent with the majority rule holding "that a lesser crime is an included offense when it consists of legal elements which must always be present for the greater crime to have been committed *in the manner in which the greater crime is charged in the accusatory pleading." Id.* (quoting Jerrold H. Barnett, *The Lesser-Included Offense Doctrine: A Present Day Analysis For Practitioners,* 5 CONN. L. REV. 255, 291 (1972)) (*cited in* AMERICAN LAW INSTITUTE, MODEL PENAL CODE AND COMMENTARIES, sec. 1.07, at 130 & n. 109 (1985)); *see also State v. Ballard,* 394 S.W.2d 336, 340 (Mo. 1965) ("A lesser offense may only be established where it is necessarily included in the greater offense actually charged[.]"). In sum, "for an offense of a lesser degree to be an included offense, for purposes of section 556.046, RSMo Supp. 2002, it must be based on the criminal conduct that is alleged in the information or indictment as to the great-

er/charged offense." *State v. Collins*, 154 S.W.3d 486, 495 (Mo. App. 2005).

In this case, the "offense charged" is second degree murder as charged in the indictment. The state indicted Mr. Sanders for second degree murder based on allegations he knowingly caused Ms. Hill's death by "kicking her and strangling her." Mr. Sanders' proffered involuntary manslaughter instruction, however, would have required the jury to find Mr. Sanders recklessly caused Ms. Hill's death by "kicking her." Mr. Sanders' proffered instruction, therefore, impermissibly modified the criminal conduct underlying the charged offense by deviating from "the manner in which *the greater* crime is charged in the accusatory pleading." *Hibler*, 5 S.W.3d at 150. By omitting the criminal conduct of strangling Ms. Hill as alleged in the charged offense, Mr. Sanders' proffered instruction impermissibly deviated from the "criminal conduct that is alleged in the information or indictment as to the greater/charged offense." *Collins*, 154 S.W.3d at 495.

The dissent asserts Mr. Sanders' proffered involuntary manslaughter instruction was proper because, consistent with section 556.046.1(1), RSMo Supp. 2002, it was based on "proof of the same or less than all the facts required to establish the commission of the offense charged[.]" While section 556.046.1(1), RSMo Supp. 2002, defines lesser included offenses, it is silent on the distinct and dispositive issue of whether Mr. Sanders proffered a proper instruction on a lesser included offense. As established, there is no dispute that involuntary manslaughter is a nested lesser included offense of second degree murder. Mr. Sanders' claim of instructional error fails, however, because his instruction deviated from "the manner in which the greater crime is charged in the accusatory pleading." *Hibler*, 5 S.W.3d at 150.

The dissent asserts *Hibler* and *Collins* are inapposite because both cases are based on due process considerations which may limit a defendant's criminal liability for offenses other than the offense charged. Both cases, however, explain the generally applicable concept that a proper lesser included offense is one that is consistent with the criminal conduct charged in the information or indictment. For instance, while *Collins* held the state's lesser included offense instruction improperly submitted a separate offense because it added a fact not alleged in the amended information, the fundamental defect in the state's instruction was that it deviated from the criminal conduct alleged in the amended information. Mr. Sanders' proffered instruction suffers the same essential defect in that it deviates from the charged criminal conduct by requiring the jury to determine whether he killed Ms. Hill by kicking her instead of by kicking and strangling her, as charged by the state. While Mr. Sanders' improper instruction does not raise the same due process considerations present in *Collins*, his proffered instruction was, nonetheless, improper.

If, as the dissent argues, Mr. Sanders can selectively alter or omit criminal conduct when requesting a lesser included offense instruction, nothing would preclude him from requesting instructions on the "lesser included offenses" of committing second degree murder and voluntary manslaughter by only kicking Ms. Hill and a "lesser included offense" instruction on every other subset of the facts charged. That is not intended by section 556.046, RSMo Supp. 2002, and would allow lesser included offenses to become a tactical ploy aimed at sowing confusion rather than a tool for realizing the "fundamental values embodied in the presumption of innocence and the right to a jury trial." *Jackson*, 433

S.W.3d at 402. Section 556.046, RSMo Supp. 2002, limits submissions for lesser included instructions to those outlined by the statutes for the lesser included offenses.

## Conclusion

The trial court did not commit instructional error by refusing Mr. Sanders' improperly worded involuntary manslaughter instruction. The judgment is affirmed.

Fischer, C.J., Wilson and Russell, JJ., concur;

Draper, J., dissents in separate opinion filed;

Stith, J., concurs in opinion of Draper, J.

Powell, J., not participating.

George W. Draper III, Judge, dissenting.

I respectfully dissent from the principal opinion's holding that Christopher M. Sanders (hereinafter, "Mr. Sanders") failed to proffer a properly worded lesser-included offense instruction. The principal opinion relies on *State v. Hibler*, 5 S.W.3d 147 (Mo. banc 1999) and *State v. Collins*, 154 S.W.3d 486 (Mo. App. W.D. 2005), to hold the trial court did not err in refusing Mr. Sanders' proffered involuntary manslaughter instruction because it impermissibly modified the charged offense by requiring the jury to find he caused the victim's death by kicking her as opposed to kicking and strangling her. Neither *Hibler* nor *Collins* holds that a proffered lesser-included offense instruction is improper because it hypothesizes a subset of the facts supporting the charged offense. By definition, a lesser-included offense consists of a subset of the elements necessary to convict the defendant of the offense charged. *State v. Roberts*, 465 S.W.3d 899, 902 (Mo. banc 2015). Mr. Sanders' prof-

fered involuntary manslaughter instruction was proper. Therefore, consistent with *State v. Jensen*, No. SC95280, 524 S.W.3d 33, 2017 WL 2952320 (Mo. banc 2017), I would hold the trial court committed reversible instructional error in failing to instruct the jury on the nested lesser-included offense of involuntary manslaughter.

The principle opinion's reliance on *Hibler* and *Collins* is misplaced. *Hibler* and *Collins* both deal with due process considerations in allowing a defendant to be convicted of a lesser-included offense from the charged indictment rather than the form of the proffered lesser-included instruction. *Hibler*, 5 S.W.3d at 150; *Collins*, 154 S.W.3d at 494-95.

In *Hibler*, this Court reversed the trial court's refusal to submit the defendant's lesser-included instruction for third-degree assault to the jury. *Hibler*, 5 S.W.3d at 148. The Court's analysis, much like the Court's recent decision in *State v. Jackson*, 433 S.W.3d 390 (Mo. banc 2014), focused upon the decision whether to submit a lesser-included instruction. The *Hibler* court set forth the framework supporting the position that there are no due process violations in permitting a lesser-included offense instruction when the lesser-included offense stems from "the greater offense *actually* charged." *Hibler*, 5 S.W.3d at 150 (quoting *State v. Ballard*, 394 S.W.2d 336, 340 (Mo. 1965)). The principal opinion then imports this general framework into its analysis to find that because the language of the proffered lesser-included instruction did not mirror the charged offense it was in an improper form and could be rejected. *Hibler* never speaks to the form of a proper instruction and is irrelevant in the context of the principal opinion's analysis.

In *Collins*, the state's amended information charged the defendant with first-degree assault for "knowingly caused serious

physical injury to [the victim] by *striking him with [his] hands or feet.*" *Id.* at 494. The trial court also instructed the jury according to the state's proffered instruction for the lesser-included offense of third-degree assault. This instruction required the jury to determine whether the defendant "knowingly caused physical contact with [the victim] by *poking him with his finger . . . .*" *Id.* The jury found the defendant guilty of third-degree assault. *Id.* at 490. *Collins* held, as a matter of due process, that "a criminal defendant may not be convicted of an offense not expressly charged in the information or indictment." *Id.* at 494 (citing *Hibler*, 5 S.W.3d at 150 and *State v. Smith*, 592 S.W.2d 165, 165 (Mo. banc 1979)). The court found the third-degree assault instruction was improper because it *added* a new factual allegation—"poking him with his finger"—that was never alleged in the state's amended information. *Collins* simply holds that because poking with a finger is not the same conduct as striking with hands or feet, the state impermissibly submitted a separate offense to the jury. *Id.* at 495.

Unlike *Collins*, Mr. Sanders' proffered lesser-included instruction did not impermissibly modify the charged offense. The state charged Mr. Sanders with second-degree murder for knowingly causing the victim's death by "kicking and strangulating her." His proffered instruction would have required the jury to determine whether he recklessly caused the victim's death by "kicking her." By requiring the jury to determine whether he killed the victim by "kicking" her as opposed to "kicking and strangulating" her, Mr. Sanders' proffered instruction hypothesizes a subset of the facts underlying the charged conduct and, unlike *Collins*, does not hypothesize a separate offense. Mr. Sanders' proffered instruction submitted a proper lesser-included offense because it was based on "*proof of the same or less than all the facts* required to establish the commission of the offense charged . . . ." Section 556.046.1(1), RSMo Supp. 2014 (emphasis added).

Mr. Sanders' proffered instruction was based on the same, but less, facts than those charged. This is in direct opposition to the jury instructions in *Collins*, wherein the trial court instructed the jury on facts that were not charged at all. Additionally, in *Collins*, *the state* introduced new, uncharged facts into a jury instruction, not the defendant. Mr. Sanders' proffered instruction comported with his theory at trial that he kicked but did not strangle the victim.[1]

Further, the principal opinion's concern that a defendant may alter criminal conduct to create confusion for the jury is misplaced. An instruction that introduces a new separate offense from the one charged is not a proper lesser-included instruction and should be rejected. *See Collins*, 154 S.W.3d at 494-97. Here, Mr. Sanders' instruction was based upon the charged offense and supported his theory of his culpability.

Mr. Sanders timely submitted a proper instruction on the nested lesser-included offense of involuntary manslaughter. There is was no allegation Mr. Sanders' proffered instruction failed to comply with the applicable MAI. *See State v. Blurton*, 484 S.W.3d 758, 768-69 (Mo. banc 2016) (finding no trial court error in rejecting a proffered instruction that failed to comply with MAI). There is no legal requirement

---

1. To hold that instructions may only mirror the language of the state's information precludes a defendant from ever alleging he or she committed a subset of the conduct charged and allows the state to frame all of the instructions based only on its factual theory of the crime.

for a defendant to adhere to the identical language of an indictment.[2] *Hibler* and *Collins* only stand for the proposition that a lesser-included offense instruction must be for a lesser-included offense of the offense charged; there may not be additional conduct alleged in the instructions which would constitute a new, separate offense.

Accordingly, I would find the trial court erroneously rejected a proper lesser-included instruction. I would also follow the analysis of *Jensen* in determining that it was prejudicial to not provide Mr. Sanders' lesser-included instruction to the jury. I would reverse and remand this case.

2. Identical language in an instruction is almost never required. When a defendant requests a converse instruction in a civil case, the instruction "should mirror the language of the verdict director." *Leake v. Burlington N. R. Co.*, 892 S.W.2d 359, 365 (Mo. App. E.D. 1995); MAI 33.01. When a criminal defendant seeks a converse instruction, the defendant may select an element or elements from the verdict director which he or she seeks to emphasize. *State v. Julius*, 453 S.W.3d 288, 302 n.10 (Mo. App. E.D. 2014); MAI-CR 3d 308.02. In neither instance are the jury instructions limited to the language of the information.