

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) WD84052 |
| | ) |
| v. | ) OPINION FILED: MAY 3, 2022 |
| | ) |
| LINDSAY MICHELLE FORBES, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Saline County, Missouri**
The Honorable Dennis Allen Rolf, Judge

Before Division Three: Gary D. Witt, Presiding Judge, Anthony Rex Gabbert, Judge and
W. Douglas Thomson, Judge

Lindsay Michelle Forbes ("Forbes") appeals the judgment of the Circuit Court of

Saline County, Missouri ("trial court"), convicting her, following a jury trial, of the Class

B felony of financial exploitation of an elderly person (Forbes's father, "Father"), section

570.145.[1] On appeal, Forbes alleges that the trial court: (1) erred by submitting the verdict

directing jury instruction because it criminalized a legal act in that it required the jury to

find that Forbes "knowingly obtained control of a bank account and proceeds from the sale

---

[1] All statutory references are to the Revised Statutes of Missouri as in effect in June of 2016, unless otherwise noted.

of a [vehicle] . . . with the intent to deprive [Father] permanently of the property, and . . . [that Forbes] did so by the use of undue influence" while Forbes in fact obtained control of the bank account and the vehicle by order of the probate court when she was appointed as conservator; (2) erred by submitting the verdict directing jury instruction because it submitted an aggregation of acts over a period of fifteen months and failed to differentiate between various acts that would have ensured the jury unanimously convicted her of the same act or acts; (3) plainly erred by submitting the verdict directing instruction because the instruction aggregated various acts that may have been a series of misdemeanor offenses into a felony offense; (4) plainly erred by submitting the verdict directing instruction because there was no evidence to support that Father was detrimentally affected by Forbes's actions, only that he may be detrimentally affected at some unknown future time; (5) erred in refusing to instruct the jury on the lesser-included offense of stealing; (6) erred in overruling Forbes's motion to dismiss because the probate court had exclusive jurisdiction over the matter; and (7) erred in denying Forbes's motion for new trial after having originally properly and timely sustain[ed] the motion because the trial court erroneously concluded that its original ruling on the motion for new trial was untimely.

We reverse the judgment of the trial court, and direct the trial court to discharge Forbes.

**Factual and Procedural Background**

In 2011, after his wife passed away, Father moved from Illinois to Missouri to be near his daughter, Forbes. In 2015, Forbes found Father, who was living on his own, unconscious with a gun under his pillow. Father was then on Hospice care for some time.

2

After Father was removed from Hospice care, Forbes took twelve weeks of FMLA time off from her job as a Registered Nurse so she could take care of Father in his home. In June of 2015, Forbes obtained power of attorney for Father. Father also made a will, with the help of an attorney, leaving everything to Forbes. Forbes returned to work but had to keep taking days off because Father was falling, he was having cardiovascular issues, and his behavior was odd.

In approximately May of 2016, Father drove to a care home in Concordia, Missouri, at around midnight stating that he had a delivery for them. The care home turned him away, stating that they could not take deliveries at that time, and Father drove to Illinois in the middle of the night, reaching a friend's house at approximately 6:30 in the morning. From there, Father drove to a trucking company in Kanas City, Missouri, fell asleep in the parking lot, and then went into the trucking company, demanding a paycheck and demanding a truck to drive (Father had worked as a truck driver). After this incident, Forbes determined that Father needed to be placed in a safe facility, and she arranged for him to move to The Arbors, which was the memory care portion of the Westport senior care facility. At around this same time, Forbes applied to the probate court to become Father's guardian and conservator, and she was so appointed on June 29, 2016. When Forbes was appointed as guardian and conservator, Father's checking account balance was $45,764.54 and he also owned a vehicle valued at approximately $10,000.

Father's care at Westport was, by agreement with the facility, to be equal to the amount he was receiving from his Social Security and pension, plus the payments he would be receiving from the VA as a veteran. However, the VA payments were delayed because

3

Father owned too much property, and Father's balance at Westport grew to around $20,000. Father also had a balance outstanding at Westport's affiliated pharmacy, although the VA should have been providing Father's medications. Forbes wrote a check to Westport in September of 2016 for over $17,000 to assist in paying for his care. However, because a balance still remained on Father's account, the administrator of Westport made a "hotline" call to report Forbes's delinquency on Father's account. Other than non-payment of the bill, the administrator did not have any concerns over Forbes's treatment of Father; she visited him, treated him well, and took him to appointments when needed, and Forbes communicated well with Westport. In response to the hotline call, the Missouri Department of Health and Senior Services, Division of Aging together with the Marshall Police Department began an investigation.

In August of 2017, Forbes voluntarily relinquished her guardianship and conservatorship over Father and his estate, and Paula Barr ("Barr"), the Saline County Administrator, was appointed as Forbes's successor on September 11, 2017. At the time Barr took over, Father's checking account had a balance of $3,653.69 and his vehicle had been sold.

The investigation determined that starting in September of 2016, Forbes had begun making fairly regular ATM withdrawals and other debits to places such as gas stations, Wal-Mart stores, and several other businesses. Forbes had also withdrawn $10,000 in cash on a single day in November of 2016, and she had used money from Father's account to pay for a vacation in Arkansas that she took with her husband. Forbes also sold Father's vehicle, which he was no longer driving, and used the proceeds toward a new vehicle for

4

herself. Forbes did pay some expenses on Father's behalf such as medical bills and property taxes as well as providing Father cash for things such as haircuts, cigarettes, and alcohol.

The State charged Forbes with the Class B felony of financial exploitation of an elderly person by undue influence, pursuant to section 570.145. The information charging the offense alleged that Forbes committed the Class B felony of financial exploitation of the elderly, between June 29, 2016 and September 10, 2017, Forbes exerted undue influence over Father, who was over 60 years of age, and "knowingly obtained control of the assets and bank account" of Father, with a value of more than $25,000, and with the intent to permanently deprive Father of the use and benefit of that property, thereby benefitting herself and detrimentally affecting Father. A jury trial was held. At the instruction conference following the evidence, Forbes's counsel offered verdict directors for two different stealing offenses that he argued were lesser-included offenses to the charged offense.[2] The trial court found that these offenses were not lesser-included offenses and rejected the proposed verdict directors. Instead, the trial court gave the jury the State's verdict director[3], which stated:

Instruction Number 5

If you find and believe from the evidence beyond a reasonable doubt[:]

First, that between June 29th, 2016, and September 10th, 2017, in the County of Saline, State of Missouri, the Defendant knowingly obtained control of a

---

[2] The jury instructions were not included in the record on appeal, but only in the appendix to the brief. The inclusion of documents in an appendix to a brief does not make them part of the record on appeal. *G.B. v. Crossroads Academy-Central Street,* 618 S.W.3d 581, 586 n. 4 (Mo. App. W.D. 2020).

[3] A copy of Instruction Number 5, although in the Appendix to Forbes's brief, was not included in the legal file. The instruction cited in this opinion is taken from the transcript of the trial. The verdict directors for the lesser offenses offered by Forbes also do not appear in the legal file.

5

bank account and the proceeds from the sale of a 2013 Ford Escape, property of [Father] and;

Second, the Defendant did so with the intent to deprive [Father] permanently of the use of his property, and;

Third, that at that time [Father] was 60 years of age or older and;

Fourth, that the Defendant was thereby benefitted and [Father] detrimentally affected and;

Fifth[,] Defendant did so by the use of undue influence and;

Sixth, that the property had a value of at least $25,000, then you will find the Defendant guilty of exploitation of an elderly person involving $25,000 or more.

However, unless you find and believe from the evidence, beyond a reasonable doubt, each and all of these propositions, you must find the Defendant not guilty of that offense.

As used in this instruction, the term undue influence means the use of influence by someone who exercises authority over an elderly person or person with a disability in order to take unfair advantage of that person's vulnerable state of mind, neediness, pain or agony. Undue influence includes but is not limited to the improper or fraudulent use of a power of attorney, guardianship, conservatorship, or other fiduciary authority.

As used in this instruction, the term elderly person means a person 60 years of age or older.

During jury deliberations, the jury asked for clarification whether "intent was on the days she took over or between the dates on said form." The trial court informed the State:

[Court:] Well, here's the problem. This should have never been put in here like this. Normally it is gained control of a bank account. It is not what the problem should have been. The problem should have been the money that was taken from the bank account. But I asked when we started--

[Defense:] I objected to that language if you recall.

6

[State:] And I wasn't privy to the drafting of this. So I don't know. I wasn't trying to pawn off, but I wasn't--

[Court:] It is a big deal for you. I mean, I don't know why you would have objected.

[Defense:] Well, because--

[Court:] You must be guided by the instructions the Court has given to you, that is about all I can say.

The jury found Forbes guilty on September 26, 2019. The trial court granted an extension of time to file post-trial motions.

On October 18, 2019, Forbes timely filed her motion for new trial or, alternatively, a motion for a judgment of acquittal. Forbes argued that the court should enter a judgment of acquittal because the evidence had been insufficient to support her conviction as charged. On January 13, 2020, the trial court orally sustained the motion for new trial. On January 31, 2020, the trial court set aside its January 13, 2020 ruling on the motion for new trial erroneously finding that the motion for new trial was denied by operation of law because more than ninety days had passed between the filing of the motion for new trial, October 18, 2019, and the date the trial court sustained the motion, January 13, 2020. A sentencing hearing was scheduled for February 10, 2020.

At the sentencing hearing, the trial court again expressed doubt about the charge and the verdict director given to the jury:

[Court:] Mr. [Prosecutor], I think she is guilty of something, but I will be shocked if the Court of Appeals doesn't set this aside. I don't see any way that she is going to be convicted of taking control of the bank account when she was given the bank account by the Probate Court. And there is a pretty decent chance that the Court of Appeals is going to send this back and say

7

acquitted. But if that is what happens, that is what happens. If they don't, Mr. [Counsel] your client is going to be serving a sentence.

* * *

The 34.96 involves the right to conditional release pending appeal. One of the things the Court is . . . going to take into consideration is the strength of the case. Unless I'm wrong and every other judge I have discussed this case with is wrong, I think she is going to win on appeal. So I'm going to leave the bond as currently posted for appeal purposes.

The trial court then sentenced Forbes to ten years in the Department of Corrections and continued the case for a restitution hearing. Forbes filed a notice of appeal, however, because the trial court's judgment had not yet addressed the issue of restitution, and this Court dismissed the appeal as premature. A second sentencing hearing was held on September 14, 2020, wherein Forbes was sentenced to fifteen years in prison and ordered to pay restitution in the amount of $26,118.51. This appeal follows.

**Standard of Review**

Most of Forbes's points on appeal allege instructional error either regarding the verdict director or the failure to submit the lesser included offense instructions. Alleged instructional error is subject to *de novo* review. *State v. Sanders*, 522 S.W.3d 212, 215 (Mo. banc 2017). "Instructional error requires reversal when the error is 'so prejudicial that it deprived the defendant of a fair trial.'" *Id.* (quoting *State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016)). If the error is failure to submit an instruction on a nested lesser-included offense, prejudice is presumed. *Id.* However, it is not error to reject an improper jury instruction for a lesser-included offense or if the instruction offered is for an offense that is not properly a lesser-included offense. *Id., See also State v. Goebel*, 83 S.W.3d 639,

8

645 (Mo. App. E.D. 2002) (improper to instruct on an offense not specifically charged in the indictment or information unless it is a lesser-included offense). An unpreserved instructional error may be reviewed for plain error, at this Court's discretion, if the Court finds that manifest injustice or miscarriage of justice has resulted from the error. *State v. Escobar*, 523 S.W.3d 545, 548 (Mo. App. W.D. 2017). An alleged error in denying a motion to dismiss for lack of jurisdiction is a legal question that is reviewed *de novo*. *Hiler v. Dir. of Revenue*, 48 S.W.3d 683, 685 (Mo. App. W.D. 2001).

**Analysis**

*Instructional error: criminalizing legal activity*

Forbes's first point on appeal is that the trial court erred in submitting the verdict directing Instruction No. 5 because the instruction criminalizes a legal act in that Forbes, as the court-appointed conservator for Father, was authorized by the probate court to take control of and manage Father's bank account and his assets, and thus Forbes did not obtain control of these assets by the use of undue influence as is defined in section 570.145. The statute, as it read in June of 2016, when Forbes obtained control over these assets, provided that a person commits the offense of financial exploitation of the elderly if the person "knowingly by deception, intimidation, undue influence, or force obtains control over the elderly. . . person's property with the intent to permanently deprive the elderly. . . person of the use, benefit or possession of his or her property thereby benefitting such person or detrimentally affecting the elderly. . . person." Section 570.145 (2016). The statute defined "[u]ndue influence" as "use of influence by someone who exercises authority over an elderly person. . . in order to take unfair advantage of that persons's [sic] vulnerable state

9

of mind, neediness, pain, or agony. Undue influence includes, but is not limited to, the improper or fraudulent use of a power of attorney, guardianship, conservatorship, or other fiduciary authority." Section 570.145.2(5) (2016). The statute was amended, effective January 1, 2017, but the changes were not substantively significant as to the applicable provisions.[4]

"When an applicable MAI-CR instruction is available, that instruction must be given by the trial court as written, and its use will not constitute error." *State v. Woodworth*, 941 S.W.2d 679, 699 (Mo. App. W.D. 1997). As Forbes points out, the form of Instruction No. 5 was taken directly from MAI-CR, but it was altered by the State in a way that separates the facts, as established by the evidence presented, from Forbes's charge.

As instructed, in order to convict Forbes, the jury had to find:

1) Between June 29th, 2016 and September 10th, 2017, Forbes obtained control of the bank account and the proceeds from the sale of the vehicle, and

2) Forbes did so with the intent to permanently deprive Father of its use, and

3) Father was over 60 years of age, and

4) Forbes benefited and Father was detrimentally affected, and

5) Forbes did so by undue influence, and

6) The property value was at least $25,000.

---

[4] The range of punishment for this offense was changed, but the trial court ruled that Forbes would benefit from the lesser range of punishment in effect at the time the charged offense and neither party appeals that determination, so this is not an issue in this case. While Forbes's brief claims that the version of section 570.145 made no mention of undue influence prior to 2017, Forbes is mistaken. The statute included undue influence as of all relevant dates in this case.

However, this instruction differs from the State's amended felony information; the information does not charge Forbes with obtaining control over the bank account and the "proceeds from the sale of the vehicle," but rather it charges her with having "obtained control of the *assets and bank account* of" Father. (Emphasis added). The State's evidence consisted largely of ATM withdrawals and expenditures Forbes made from Father's bank account between September of 2016 and September 2017, before Barr took over as guardian and conservator. Evidence was also presented that Forbes sold Father's vehicle and used the proceeds to purchase a newer vehicle for herself. While these transactions, expenditures, and withdrawals could certainly be relevant to show that Forbes had an "intent to permanently deprive" Father of the use or benefit of his assets, that is not the only element the State was required to prove. The critical element of this offense pursuant to the amended information filed by the State, as Forbes points out and the trial court clearly noted, is that she "obtain[ed] control over" the bank account and the assets by undue influence. Section 570.145.2(5). There was simply no evidence that this occurred.

The probate court appointed Forbes as the guardian and conservator for Father in June of 2016, after Father had exhibited strange behavior that was consistent with dementia and exhibited signs that he was a risk to his physical health and safety. There is no argument that Father was not in need of a guardian or conservator at the time Forbes was appointed or that she exerted any undue influence over Father to be appointed to this position. No one objected to Forbes's appointment, and she had been caring for Father intermittently for some period of years prior to her appointment. The Westport administrator was working with Forbes to obtain arrangements for the care of Father and

11

informed Forbes about VA benefits for which Father was eligible. There was no indication at the time she was appointed that Forbes was exerting any undue influence on Father, and she was not charged with inappropriately spending the corpus of Father's assets. The verdict director instructed the jury that it could find Forbes "obtained control of the proceeds" from the sale of his vehicle, but in this respect the instruction is at odds with the charge as filed by the State.[5] And while undue influence can include "the improper or fraudulent use of a power of attorney, guardianship, conservatorship, or other fiduciary authority," the improper use of the guardianship or conservatorship shown by the evidence in this case did not relate to Forbes's obtaining control over Father's assets but rather to her depletion of the assets months after she had obtained control over them pursuant to the order of the probate court. *See* section 570.145.2(5). Thus, there was no evidence that she obtained control over Father's assets by means of undue influence, and the verdict directing instruction was erroneously submitted to the jury.

Instructional error only warrants reversal when the error is "'so prejudicial that it deprived the defendant of a fair trial.'" *Sanders*, 522 S.W.3d at 215 (quoting *Zetina-Torres*, 482 S.W.3d at 810). As the trial court surmised, this erroneous instruction clearly prejudiced Forbes such that it deprived her of a fair trial because it allowed the jury to convict her of the criminal offense based on the legal action of taking control of the bank account pursuant to the order of the probate court.

---

[5] Even if the amended information had charged Forbes with improperly obtaining control over the proceeds of the vehicle, the evidence showed that the vehicle was worth only nine to ten thousand dollars, which is far below the $25,000 threshold required to constitute a B felony under section 570.145, which is how the State charged Forbes.

Forbes's first point is granted.  Her remaining points on appeal are therefore moot.

Forbes's motion before the trial court was alternatively for a new trial or a verdict of acquittal.  An information may not be amended after a verdict.  Rule 23.08; *State v. Urban*, 796 S.W.2d 599, 602 (Mo. banc 1990).  The amendment charged Forbes with felony financial exploitation of an elderly person by obtaining control over Father's bank account and his assets, with a value of $25,000, with the intent to permanently deprive him thereof, by way of undue influence.  As stated above, the State did not produce sufficient evidence to prove its charge that Forbes "obtained control" of Father's assets by way of undue influence because it is undisputed the probate court ordered her to take control of the assets as Father's conservator.  Therefore, the trial court should have granted Forbes's motion for acquittal.  "If the information did not state an offense, the court had no [authority] to proceed.  If the evidence was not sufficient to support the verdict, then the defendant was entitled to a judgment of acquittal, and the state [is] not entitled to proceed with a new trial."  *Urban*, 796 S.W.2d at 602.[6]  Accordingly, Forbes should be discharged.

---

[6] As did the court in *Urban*, we "recognize the rule that a defendant who is found guilty and asks for a new trial cannot plead double-jeopardy when tried again."  796 S.W.2d at 601.  However, Forbes pled alternatively for a judgment of acquittal, and, also similarly to *Urban*, "it is clear that the [trial] judge was of the opinion either that [the information] did not state an offense, or that the evidence did not support the charge[] made."  *Id*. at 601-02.  We find that double jeopardy would prohibit the state from retrying Forbes for this offense.

## Conclusion

For all of the above-stated reasons, we reverse the judgment of conviction and the sentence of the trial court, and direct the trial court to discharge Forbes.

_____
Gary D. Witt, Judge

All concur

14