**STATE of Missouri, Respondent,**

v.

**Thomas EDWARDS, Appellant.**

**ED 103663**

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: October 10, 2017

596

Shaun J. Mackelprang, Assistant Attorney General, P.O. Box 899, Jefferson City, MO 65102, for respondent.

Matthew W. Huckeby, Assistant Public Defender, Office of the Missouri Public Defender, 1010 Market Street, Suite 1100, St. Louis, MO 63103, for appellant.

Lisa P. Page, Judge

Thomas Edwards ("Defendant") appeals the trial court's judgment entered upon a jury verdict convicting him of second-degree murder and armed criminal action. We affirm.

## BACKGROUND

At approximately 10 P.M. on April 21, 2013, Renee Nelson ("Nelson") was standing outside her home, located in the City of St. Louis, conversing with neighbors. During the conversation, a man wearing a black hoodie passed the group and greeted Nelson by her neighborhood-nickname "Anya." As a thirty-year resident of the neighborhood, Nelson recognized the man as Defendant.

Defendant continued walking across the street before halting at a parked automobile. After Defendant conversed with the occupant of the parked vehicle ("Victim") for approximately 30 seconds, Nelson heard gunshots. As Defendant was leaving the scene, he turned around and fired additional gunshots towards the Victim. An autopsy revealed Victim was shot seven times.

Law enforcement arrived and concluded the crime scene resembled a drug transaction gone awry. Pursuant to the investigation, Nelson was interviewed the night of the incident. She informed law enforcement that, immediately before the commission of the crime, Defendant walked within arms-length of her. Shortly thereafter, Nelson heard gunfire and witnessed Defendant discharging a gun in the direction of Victim. Although she had lived in that neighborhood for approximately thirty years and had known Defendant for approximately twenty years, Nelson provided law enforcement with the incorrect name of Defendant that night. Nelson, nevertheless, supplied law enforcement with Defendant's correct name around the time she examined a photographic lineup, infra.

At that photographic lineup, a few weeks after the commission of the crime, Nelson examined six photographs as chosen by a computer. Defendant was the only one of the six photographs who lived in or around Nelson's neighborhood. Prior to viewing the photographic lineup, it is alleged the police explicitly instructed Nelson to select "the person that did the shooting." Nelson chose Defendant's photograph, naming him as the shooter. Law enforcement then

informed Nelson that they had already arrested Defendant, seized guns and paraphernalia during his arrest, and that Defendant admitted he committed the murder.

The State charged Defendant with first-degree murder, in violation of Section 565.020[1] (Count I), armed criminal action, in violation of Section 571.015 (Count II), unlawful possession of a firearm, in violation of Section 571.070 (Count III), and possession of a controlled substance, in violation of Section 195.202 (Count IV). Defendant pled guilty to Counts III and IV, but proceeded to trial upon Counts I and II.

During trial, the court denied Defendant's motion to suppress and exclude evidence of Nelson's pretrial and in-court identifications. The trial court refused to submit Defendant's proffered jury instruction for eyewitness testimony ("Instruction A"). The jury was instructed on the charged offense of first-degree murder and on the lesser-included offense of second-degree murder. The trial court also refused to submit Defendant's proffered instructions for voluntary manslaughter ("Instruction B") and involuntary manslaughter ("Instruction C").

The jury found Defendant guilty of second-degree murder and armed criminal action. Defendant was sentenced to life imprisonment for second-degree murder and ten years' imprisonment for armed criminal action, with sentences to run concurrently.

This appeal now follows.

## DISCUSSION

Defendant advances three points on appeal. In his first point, Defendant contends the trial court erred in overruling his motion to suppress Nelson's out-of-court and in-court identifications because the pretrial procedures employed by law enforcement were unduly suggestive and, therefore, tainted both identifications.

In his second point, Defendant asserts the trial court erred in refusing his proffered jury instruction ("Instruction A"), which was modeled after the adopted-but-not-yet-effective MAI-CR 3d 310.02 (2016). Defendant contends his proffered instruction clarified important factors relating to the reliability (or lack thereof) of eyewitness identifications.

In his third point on appeal, Defendant maintains the trial court committed reversible error in refusing to instruct on his proffered instructions of the lesser-included offenses of voluntary and involuntary manslaughter.

## Point I—Trial Court Did Not Err in Admitting Nelson's Identifications

In his first point on appeal, Defendant avers the trial court erred in denying his motion to suppress Nelson's out-of-court and in-court identifications because the photographic lineup employed by law enforcement was impermissibly suggestive.

### Standard of Review

"In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Nelson*, 334 S.W.3d 189, 193 (Mo. App. W.D. 2011). This court reviews the facts and inferences therefrom in the light most favorable to the trial court's ruling, and we disregard all contrary evidence. *State v. Murray*, 428 S.W.3d 705, 709 (Mo. App. E.D. 2014). We will not disturb the trial court's decision to admit or exclude

1. All statutory references are to RSMo Cum. Sup. 2015, unless otherwise indicated.

the identification testimony unless there has been an abuse of discretion. *State v. Green*, 469 S.W.3d 881, 883 (Mo. App. E.D. 2015).

## Analysis

### A. Two-Step Analysis

■ "A defendant has a due process right to exclude identification testimony which results from procedures that are unnecessarily suggestive and conducive to an irreparably mistaken identification." *State v. Hoopingarner*, 845 S.W.2d 89, 93 (Mo. App. E.D. 1993). Where pretrial identification testimony is challenged on appeal, this court engages in a two-step analysis. *Foster v. State*, 348 S.W.3d 158, 161 (Mo. App. E.D. 2011).

First, we assess whether the procedures employed by law enforcement during the pretrial identification were impermissibly or unduly suggestive. *State v. Hunter*, 43 S.W.3d 336, 340 (Mo. App. W.D. 2001). Second, if the procedures employed by law enforcement are unduly suggestive, we then proceed to evaluate "whether the suggestive procedures have so tainted the identification as to lead to a substantial likelihood that the pre-trial identification was not reliable." *State v. Chambers*, 234 S.W.3d 501, 513 (Mo. App. E.D. 2007).

■ The defendant must satisfy both prongs to render the identification testimony inadmissible. *Id.*; *see also State v. Barriner*, 210 S.W.3d 285, 297 (Mo. App. W.D. 2006) ("If the defendant carries his burden, in showing that both prongs of the test are satisfied, then both the out-of-court and in-court identifications by the witness of the defendant must be excluded by the trial court."). Correspondingly, if the pretrial identification procedures are determined not to be unreasonably suggestive, then the court need not review the reliability of the identification. *Green*, 469 S.W.3d at 884.

### B. The pretrial procedures employed were not unduly suggestive

■ The first step of our analysis focuses solely on the actions of the police in administering the pretrial procedures for identification. *State v. Mullins*, 340 S.W.3d 311, 314 (Mo. App. E.D. 2011). "A pretrial identification procedure is unduly suggestive if the identification results not from the witness's recall of first-hand observations, but rather from the procedures or actions employed by the police." *State v. Glover*, 951 S.W.2d 359, 362 (Mo. App. W.D. 1997). In evaluating the potential suggestiveness of pretrial procedures, a court may examine the entire process, including "an evaluation of the conditions under which the identification occurred ... including police commentary." *Id.*

Defendant maintains numerous pretrial identification procedures were unduly suggestive, causing Nelson's out-of-court and in-court identifications to become tainted and inadmissible. Specifically, Defendant avers the pretrial identifications procedures were unduly suggestive because: (1) initially, Nelson inaccurately identified the name of the suspect; (2) the police requested Nelson select "the person that did the shooting" during the photographic lineup; (3) immediately after Nelson selected Defendant from the photographic lineup, the police communicated additional information to Nelson about Defendant and the circumstances surrounding the criminal investigation; and (4) the photographic lineup included no photographs of individuals residing in Nelson's neighborhood but for Defendant's photograph. We will address each in turn.

#### 1. Inaccurate Name of Defendant

Nelson was interviewed by the police near the scene of the crime, shortly after

the crime. She informed the police that immediately before the commission of the crime, she was standing outside her home and Defendant walked within arms-length of her. Moments later, Nelson heard gunfire and witnessed Defendant discharging a gun in the direction of the Victim. Although Nelson had lived in that neighborhood for approximately thirty years and had known Defendant for approximately twenty years, Nelson provided the police with the incorrect name of Defendant. However, Nelson provided the police with Defendant's correct name around the time of the photographic lineup.

Defendant's first objection regarding the pretrial procedures employed is completely unrelated to any pretrial identification procedure *utilized by the police.* Rather, Defendant is merely contesting the reliability of Nelson's pretrial identification, based upon her memory and recollection after observing a traumatic and violent incident. *Glover,* 951 S.W.2d at 363 ("Such matters provide fodder for cross-examination and for argument to the jury that the identification was not credible or believable; they do not provide a basis to suppress the identification as the product of an unduly suggestive procedure."). Defendant's complaint does not relate to the suggestiveness of the "procedures or actions employed by the police[.]" *Glover, supra; see, e.g., State v. Winters,* 900 S.W.2d 636, 640-41 (Mo. App. W.D. 1995).

Defendant merely attempts to bootstrap Nelson's initial inability to correctly recall Defendant's name to substantiate his contention that the pretrial procedures were unduly suggestive. *State v. Lawrence,* 700 S.W.2d 111, 112 (Mo. App. E.D. 1985) (lineup held not to be unduly suggestive when friends or family suggested to the witness that the defendant was responsible for the crime and where non-governmental sources provided the witness with the de-

fendant's name). Defendant's argument is without merit.

*2. Police Commentary Prior to Photographic Lineup*

A few weeks after the commission of the crime, Nelson participated in a photographic lineup. Prior to viewing the lineup prepared by the police, she was allegedly instructed to select "the person that did the shooting." On appeal, Defendant contends that such an instruction by the police implicitly suggested to Nelson "that the shooter's photograph was definitely one of the photographs she [Nelson] was shown."

 "The conduct of any sort of identification process is suggestive to the witness being requested to make an identification ... [and] [a]ny rational person requested to view either a group of photographs or a lineup knows that there is some belief that the persons sought might be included in the group viewed." *State v. Sanders,* 621 S.W.2d 386, 388 (Mo. App. W.D. 1981); *see also State v. Holly,* 697 S.W.2d 250, 252 (Mo. App. W.D. 1985) ("[I]t is implicit in lineup procedure (analogous to photographs) that among the persons in the lineup is one who is suspected by the police as the perpetrator of the crime."). Accordingly, any pretrial procedure may be suggestive, but "[i]t is only when such identification procedures become so suggestive that a substantial risk arises that a misidentification will occur that they become suspect." *Sanders,* 621 S.W.2d at 388; *see, e.g., State v. Stephens,* 708 S.W.2d 345, 348 (Mo. App. S.D. 1986) (lineup was not rendered unduly suggestive merely because the victim anticipated the presence therein of his or her assailant).

Defendant has failed to demonstrate a substantial risk of misidentification, and we do not find the alleged police instruction so unduly suggestive as to taint the pretrial procedures and Nelson's subse-

quent identifications. *U.S. v. Person*, 478 F.2d 659, 661 (D.D.C. 1973) ("[T]he mere fact that suspects are included within the line-up, and that witnesses know or assume this to be the case, is an inescapable aspect of line-up identification procedure.").

### 3. Police Commentary After the Photographic Lineup

Upon conclusion of the photographic lineup—and after Nelson selected Defendant's photograph—the police informed Nelson that they had already arrested Defendant, seized guns and paraphernalia during his arrest, and that Defendant admitted he committed the murder.

Appellant has neglected to cite any legal authority, nor did this court discover any in our independent research, holding that police are prohibited from commenting about the investigation after the pretrial identification is completed. Defendant's complaint does not relate to the suggestiveness of the "procedures or actions *employed by the police*" prior to the identification. *Glover, supra* (emphasis added). We find no merit in Defendant's argument that Nelson's pretrial identification was tainted because the police provided commentary about their investigation to Nelson *after the conclusion of the pretrial identification.*

### 4. Photos Included in Photographic Lineup

Defendant challenges the pretrial photographic lineup that consisted of six photographs, including Defendant's photograph. The detective who compiled the photo array testified that the photographic lineup was computer-generated, and he did not know where any of the other five individuals resided. On appeal, Defendant argues that the detective's failure to include other individuals that resided in the same neighborhood as Nelson and Defendant caused

the pretrial procedures to become unduly suggestive, because Nelson had known Defendant for approximately twenty years. Defendant suggests this somehow attracted undue attention to his photograph.

 Although the police may not employ impermissibly suggestive means to highlight the suspect's photograph during the course of a photographic lineup, the law does not require the police to dilute or obfuscate the photograph of the suspect. *State v. Floyd*, 347 S.W.3d 115, 125 (Mo. App. E.D. 2011) ("Since only identical twins can be identical in a lineup and as long as no one individual clearly stands out in the lineup, the law does not require exact conformity to ensure untainted identification procedure.") (internal citations omitted); *see, e.g., Hunter*, 43 S.W.3d at 341 (holding that the photo lineup was not unduly suggestive where the defendant's photo was the only one that included his name); *State v. Hornbuckle*, 769 S.W.2d 89, 93-94 (Mo. banc 1989) (photographic lineup was not impermissibly suggestive notwithstanding the fact the defendant's name and recent arrest date appeared upon the photograph and newspaper accounts had identified defendant as suspect in similar robbery by time array was conducted). Measured by established standards, we do not find the procedures employed in the instant case impermissibly distinguished or differentiated Defendant's picture. *See State v. Strickland*, 609 S.W.2d 392, 396 (Mo. banc 1980) (witness viewed the lineup to select the *culprit*, not necessarily the defendant).

Moreover, Defendant has, again, failed to direct this court's attention to any legal authority requiring police to account for the witness's prior knowledge, familiarity, or acquaintance with the defendant. Further, no legal authority is provided for the proposition that law enforcement must include photographs of individuals residing

within the vicinity of either the defendant or the witness. The photographic lineup was not so unduly suggestive as to violate Defendant's due process rights.

Finding the pretrial procedures were not unduly suggestive, the trial court properly admitted Nelson's in-court and out-of-court identifications.[2] *Foster*, 348 S.W.3d at 163. Therefore, the trial court did not abuse its discretion in denying Defendant's motion to suppress and admitting Nelson's identifications.

Point I is denied.

## Point II—Trial Court Did Not Err in Refusing Defendant's Jury Instruction A

In his second point on appeal, Defendant asserts the trial court erred in refusing his proffered jury instruction ("Instruction A"). Defendant's Instruction A was modeled after the adopted-but-not-yet-effective MAI-CR 3d 310.02 (2016). Defendant argues that his proffered instruction clarified important factors relating to the reliability (or lack thereof) of eyewitness identifications.

### *Standard of Review*

The trial court is afforded the discretion to submit or refuse a proffered jury instruction that has not been mandated by the Missouri Approved Instructions—Criminal ("MAI-CR").[3] *State v. Bush*, 372 S.W.3d 65, 69 (Mo. App. W.D. 2012); *see also* Rule 28.01.[4] Thus, this court's review is limited to whether the trial court abused that discretion. *State v. Durham*, 299 S.W.3d 316, 321 (Mo. App.

W.D. 2009). A trial court abuses its discretion when a "ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Davis*, 203 S.W.3d 796, 799 (Mo. App. W.D. 2006).

### *Analysis*

### A. Jury was Properly Instructed

Initially, this court notes that Rule 27.02(e), which was in effect at the time of Defendant's trial in September 2015, mandated trial courts give MAI-CR 3d 302.01 in all felony jury trials. *See* Rule 27.02(e); *see also* MAI-CR 3d 302.01 (2014). Jury instruction MAI-CR 3d 302.01, in part, guides the jury in determining the believability of a witness and the weight the jury should afford any testimony of a witness. *See* MAI-CR 3d 302.01 (2014). At the time of Defendant's trial, the corresponding Notes On Use for MAI-CR 3d 302.01 (2014) read, in operable part as follows:

> Except as may be specifically provided for elsewhere in MAI-CR, no other additional instruction may be given on the believability of witnesses, or the effect, weight, or value of their testimony.

MAI-CR 3d 302.01 (2014), *Note On Use 3*; *Bush*, 372 S.W.3d at 71 ("The Note on Use 3 for MAI-CR 3d 302.01 ... ***prohibits*** the giving of any other or additional instruction regarding the believability of witnesses, or the effect, weight or value of their testimony.'") (emphasis in original).

---

2. Insomuch as we find the pretrial procedures were not impermissibly suggestive, we need not address the reliability prong. *State v. Kayser*, 397 S.W.3d 37, 42 (Mo. App. E.D. 2013).

3. This standard should not be conflated with our standard of review when a trial court refuses to give an approved or mandated jury instruction. *See State v. Whipple*, 501 S.W.3d 507, 513 (Mo. App. E.D. 2016) (trial court's refusal to submit the MAI-CR self-defense jury instruction is reviewed *de novo*); *State v. Jackson*, 433 S.W.3d 390, 395 (Mo. banc 2014) (*de novo* review upon the trial court's refusal to give a lesser-included offense jury instruction).

4. All Rule references are to Mo. R. Crim. P. (2015), unless otherwise indicated.

In this matter, the trial court properly furnished a jury instruction, in compliance with Rule 27.02, modeled after MAI-CR 3d 302.01 (2014) (hereinafter, "Instruction No. 1"). Contrary to Defendant's assertion, Missouri courts have unequivocally declined to find error in the refusal to submit cautionary instructions about eyewitness testimony, such as Defendant's proffered Instruction A. *Bush*, 372 S.W.3d at 71.

### B. Defendant's Proffered Instruction A was Discretionary at the Time of Defendant's Trial

However, Defendant rationalizes that Instruction A should have been given because the Supreme Court of Missouri approved and adopted MAI-CR 3d 310.02 (2016)[5] a few months prior to Defendant's trial. *See* Missouri Supreme Court Order, *In re: Additions to MAI-CR 3d*, ¶ 1 (Apr. 2, 2015) (hereinafter, "April 2 Order"). The new instruction proposed ten different factors to aid the jury in assessing the reliability and accuracy of eyewitness identification testimony. *See* MAI-CR 3d 310.02 (Approved Apr. 2, 2015; Effective Jan. 1, 2016).[6] The Supreme Court's order directed the instruction, "**must** be used and followed on and after January 1, 2016, and **may** be used and followed prior thereto, and any such use shall not be presumed to be error." April 2 Order, ¶ 2 (emphasis added).

---

5. The text of MAI-CR3d 310.02 (2016) has been relocated to MAI-CR4th 410.02 (2017).

6. Available at https://www.courts.mo.gov/file.jsp?id=93173.

7. Notably, the Supreme Court subsequently vacated the version of MAI-CR 3d 310.02 (2016) upon which Defendant modeled Instruction A. *See* Missouri Supreme Court Order, "In re: Additions to MAI-CR 3d" (Dec. 16, 2015) ("December 16 Order"). The Su-

### C. No Abuse of Discretion in Denying Defendant's Proffered Instruction A

In fact, the trial court acknowledged that MAI-CR 3d 310.02 (2016) was not mandatory. The trial court further explained its rationale when it denied Defendant's request to submit Instruction A:

> And as the Court indicated, I think the instruction will be knocked down by the Supreme Court at some point because this is argumentative....

The trial court's basis for refusing Instruction A was not arbitrary or unreasonable, nor does it indicate a lack of careful consideration.[7] *See Davis*, 203 S.W.3d at 799.

Therefore, we find the trial court did not abuse its discretion because MAI-CR 3d 310.02 (2016) was *discretionary* before its effective date of January 1, 2016. Moreover, Defendant has failed to demonstrate that the trial court's refusal to give Instruction A was arbitrary and unreasonable. *See, e.g., State v. Casey*, 517 S.W.3d 570, 574-75 (Mo. App. E.D. 2016) (holding the trial court did not abuse its discretion in not submitting jury instruction MAI-CR 3d 310.02 (2016) prior to its effective date).

Point II is denied.

### Point III—The Trial Court Did Not Err in Refusing Defendant's Voluntary and Involuntary Manslaughter Instructions

In his third point on appeal, Defendant argues the trial court committed reversible error by refusing his request to instruct the jury on the lesser-included offenses of

preme Court wrote: "The Court received numerous comments concerning the proposed instruction. After careful consideration, effective January 1, 2016, the Court hereby vacates the previously adopted instruction and notes on use." December 16 Order, ¶ 1. The Supreme Court adopted a new version of MAI-CR 3d 310.02 in the prior version's place. *Id.* at ¶ 2. The Supreme Court's decision to vacate the old version of MAI-CR 3d 310.02 (2016) confirms the practical prediction of an experienced trial judge.

voluntary manslaughter and involuntary manslaughter.[8]

### Standard of Review

"This Court reviews *de novo* a trial court's decision whether to give a requested jury instruction under [Section] 556.046[.]" *State v. Jackson,* 433 S.W.3d 390, 395 (Mo. banc 2014). "Instructional error requires reversal when the error is so prejudicial that it deprived the defendant of a fair trial." *State v. Sanders,* 522 S.W.3d 212, 215 (Mo. banc 2017) (internal citations and quotation marks omitted).

A "trial court does not commit instructional error by rejecting an improper jury instruction for the lesser included offense." *Id.* (citing *State v. Blurton,* 484 S.W.3d 758, 766 (Mo. banc 2016)). Moreover, the trial court's rejection of a proffered instruction should be affirmed if the trial court was correct for any reason. *Sanders,* 522 S.W.3d at 215.

### Analysis

**A. "Nested" and Lesser-Included Offenses**

A lesser-included offense is one established by proof of the same or less than all the facts required to establish the commission of the charged crime. *State v. Smith,* 522 S.W.3d 221, 226 (Mo. banc 2017); Section 556.046.1(1). A trial court's obligation to instruct on lesser-included offenses is governed by Section 556.046. *State v. Brown,* 524 S.W.3d 44, 47 (Mo. banc 2017). Pursuant to Section 556.046, trial courts are obligated to instruct on a "lesser-included offense" when:

(1) a party timely requests the instruction;

(2) there is a basis in the evidence for acquitting the defendant of the charged offense; and

(3) there is a basis in the evidence for convicting the defendant of the lesser-included offense for which the instruction is requested.

*State v. Jensen,* 524 S.W.3d 33, 37 (Mo. banc 2017); *see also* Section 556.046.

A "*nested* lesser included offense is one that is separated from the greater offense by [only] *one* differential element for which the *State* bears the burden of proof." *State v. Payne,* 488 S.W.3d 161, 164 (Mo. App. E.D. 2016) (emphasis added); *see also State v. Randle,* 465 S.W.3d 477, 479 (Mo. banc 2015); *State v. Roberts,* 465 S.W.3d 899, 902 (Mo. banc 2015). Hence, a "nested lesser-included offense" is one which is "impossible to commit the greater without necessarily committing the lesser." *Randle,* 465 S.W.3d at 479 (citations and emphasis omitted). "When a defendant timely requests a ***proper*** instruction on a 'nested' lesser included offense, the trial court is obligated to submit the instruction even if the defendant introduced no evidence and did not dispute the state's evidence." *Sanders,* 522 S.W.3d at 216 (emphasis added); *see also Roberts,* 465 S.W.3d at 902 (citing *Jackson,* 433 S.W.3d at 401-02) ("A defendant is entitled, upon proper request, to an instruction on a 'nested' lesser-included offense, and, therefore, does not have to introduce affirmative evidence or 'cast doubt' over the state's evidence in any way."). Accordingly,

---

8. In violation of Rule 84.04, Point III raises two separate and independent allegations of trial court error, rendering this point multifarious. *See* Rule 84.04(d); *see also State v. Garrison,* 276 S.W.3d 372, 378 n.4 (Mo. App. S.D. 2009) ("Multiple claims of error in one point relied on renders the point multifarious and as such is a violation of Rule 84.04, made applicable to briefs in criminal appeals by Rule [30.06(a)]."). Nevertheless, this court elects to review Defendant's Point III *ex gratia. See, e.g., State v. Robinson,* 454 S.W.3d 428, 437 n.6 (Mo. App. W.D. 2015).

"[p]rejudice is **presumed** when a trial court fails to give a requested instruction to submit a **nested** lesser included offense." *Sanders*, 522 S.W.3d at 215 (emphasis added).

Conversely, when a lesser-included offense is not "nested," and the State's case-in-chief lacks evidence of certain elements of the lesser-included offense, then the defendant must inject evidence to establish "a basis ... for acquitting the person of the immediately higher included offense and ... a basis ... for convicting the person of that particular included offense." Section 556.046.3. For example, in *State v. Davis*, 474 S.W.3d 179 (Mo. App. E.D. 2015), this court held that, although second-degree assault was a lesser-included offense of first-degree assault, it was not a "nested" lesser included offense; therefore, the defendant bore the burden of injecting evidence of sudden passion. *Davis*, 474 S.W.3d at 186-87. In *Davis*, the defendant failed to inject evidence of sudden passion arising from adequate cause, thus the trial court did not err in refusing to submit an instruction on second-degree assault even though it was a lesser-included offense. *Id.*

Essentially, a trial court may refuse a lesser-included offense instruction if the defendant fails to proffer or "inject" evidence to merit the same; however, the trial court "cannot refuse a defendant's request for ... [a] *nested* lesser offense instruction based solely on its view of what evidence a reasonable juror must believe or what inferences a reasonable juror must draw." *Jackson*, 433 S.W.3d at 392 (emphasis added); *see also Payne*, 488 S.W.3d at 163.

In this matter, the trial court gave both of the State's proffered instructions for the charged offense of first-degree murder, as well as for the nested lesser-included offense of conventional second-degree murder. *Jensen*, 524 S.W.3d at 44 n. 4 ("second degree murder is, therefore, a nested lesser included offense of first degree murder"). However, Defendant also proffered instructions for voluntary manslaughter ("Instruction B") and involuntary manslaughter ("Instruction C"), both of which were denied by the trial court. Although both instructions are related, we address each proffered instruction individually for purposes of comprehension.

### B. Voluntary Manslaughter

Voluntary manslaughter is a lesser-included offense of both first- and second-degree murder. *See* Sections 565.025.2(1)(b), 565.025.2(2)(a). However, voluntary manslaughter "simply is not a *nested* lesser included offense[.]" *Payne*, 488 S.W.3d at 164 (emphasis in original); *see also Jensen*, 524 S.W.3d at 40 ("voluntary manslaughter is a lesser included offense of second degree murder; it is not a nested lesser included offense"). Distinctively, voluntary manslaughter includes an additional element not present in first-degree or second-degree murder—that is, the presence of sudden passion arising from adequate cause. *Payne*, 488 S.W.3d at 164 (discussing the differences between Section 565.023 (voluntary manslaughter), Section 565.021 (second-degree murder), and Section 565.020 (first-degree murder)). Thus, for a defendant to be entitled to a voluntary manslaughter instruction, there must be evidence of sudden passion arising from adequate cause.

"Sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(15). "Adequate cause" is "cause that would reasonably produce a degree of

passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Section 565.002(1). The defendant must commit the offense in sudden passion and not after there has been a time for the passion to cool. *State v. Redmond*, 937 S.W.2d 205, 208 (Mo. banc 1996). "Words alone, no matter how opprobrious or insulting, are not sufficient to show adequate provocation." *Id.* Unlike self-defense, there is no requirement that the defendant act reasonably to have his intentionally killing reduced from murder to voluntary manslaughter. *Id.* at 209. "A manslaughter instruction is typically justified when the victim perpetrates a battery upon the defendant." *State v. Arnel*, 846 S.W.2d 245, 247 (Mo. App. E.D. 1993).

██ Although the burden of proof always remains upon the State, in the event the State's case-in-chief excludes any evidence of sudden passion arising from adequate cause, it is then incumbent upon the defendant to inject evidence that he or she acted under the influence of sudden passion arising from adequate cause. *Payne*, 488 S.W.3d at 164 (citing Section 565.023.2); *see also* Section 556.046.3 (enumerating the circumstances when the trial court is "obligated" to instruct the jury on lesser-included offenses); Section 565.023.2.

Here, on appeal, Defendant advances no credible argument that he injected into evidence sudden passion at trial. Defendant fails to direct this court to a single piece of evidence or testimony that he acted under the influence of "sudden passion" arising from "adequate cause;" in fact, Defendant's entire defense was premised upon misidentification. Upon review of the entire record, this court is unable to unearth *any* evidence of "sudden passion" or "adequate cause" obligating the trial court to tender a voluntary manslaughter

instruction. *State v. Deckard*, 18 S.W.3d 495, 499-500 (Mo. App. S.D. 2000).

Therefore, we conclude the trial court did not err in refusing Defendant's proffered instruction for voluntary manslaughter because Defendant failed to inject evidence that he acted under the influence of sudden passion arising from adequate cause.

## C. Involuntary Manslaughter

██ Involuntary manslaughter, as charged in this case, is "a nested lesser included offense of second-degree murder." *Jensen*, 524 S.W.3d at 38; *Sanders*, 522 S.W.3d at 216. MAI-CR 3d 314.10 (2014) sets forth the proper manner in which to submit an involuntary manslaughter instruction as a lesser-included offense of second-degree murder, which cannot be denied by the trial court.

In every trial for a criminal offense, Rule 28.02(a) mandates our trial courts to "instruct the jury in writing upon all questions of law arising in the case that are necessary for their information in giving the verdict." Rule 28.02(a). The attorneys bear the responsibility and obligation to proffer accurate, proper, and sufficient jury instructions, including those for nested lesser-included offenses.

Recently, in *State v. Sanders*, our Supreme Court affirmed a trial court's refusal to submit a jury instruction for the *nested* lesser-included offense of involuntary manslaughter because the defendant "proffered an *improperly worded*" instruction. *Sanders*, 522 S.W.3d at 215 (emphasis added). The Supreme Court held that "a trial court does not commit instructional error by rejecting an improper jury instruction for the lesser included offense." *Id.* at 215 (citing *Blurton*, 484 S.W.3d at 766).

In this matter, Defendant's proffered involuntary manslaughter instruction read as follows:

As to Count I, if you do not find the defendant guilty of **voluntary manslaughter**, you must consider whether he is guilty of involuntary manslaughter in the first degree.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about **April 23, 2015**, in the City of St. Louis, State of Missouri, the defendant caused the death of Julius Caldwell by shooting him, and

Second that defendant recklessly caused the death of Julius Caldwell, then you will find the defendant guilty under Count I of involuntary manslaughter in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of involuntary manslaughter in the first degree.

In determining whether the defendant recklessly caused the death of Julius Caldwell, you are instructed that a person acts recklessly as to causing the death of another person when there is substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

(emphasis added).

Insomuch as Defendant's proffered involuntary manslaughter instruction read as if a voluntary manslaughter instruction was tendered, Defendant's instruction was properly denied by the trial court. Defendant's involuntary manslaughter instruction should have referenced second-degree murder, not voluntary manslaughter.

Moreover, in his involuntary manslaughter instruction, Defendant incorrectly submitted the date of the commission of the offense giving rise to Defendant's indictment as April 23, 2015, instead of the actual date, which was April 21, 2015.

If the trial court tendered to the jury Defendant's proffered Instruction C (involuntary manslaughter), the jury would have been improperly instructed, confused, and misled. *See* MAI-CR 3d 314.04, 314.08, and 314.10; *see also* Rule 28.02(c) ("Whenever there is an MAI-CR instruction or verdict form available under the law and Notes On Use, the MAI-CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form."). Pursuant to *Sanders*, the trial court is not obliged to correct Defendant's proffered instructions.

Therefore, in accordance with *Sanders*, we find Defendant's failure to proffer *properly worded* jury instruction for the offense of involuntary manslaughter precludes a finding by this court that the trial court erred in refusing Defendant's proffered jury instruction. *Sanders*, 522 S.W.3d at 215, 219. Defendant was required to submit a *properly worded* involuntary manslaughter instruction. Defendant failed to do so.

Point III is denied.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Robert M. Clayton III, P.J. and Mary K. Hoff, J., concur.