SHERRI B. SULLIVAN, P.J.
Introduction
Jason K. Ayansu (Appellant) appeals from the trial court's judgment entered after a jury trial convicting him of second-degree murder, two counts of armed criminal action, one count of attempted kidnapping, and one count of resisting arrest. We affirm.
Background
On the morning of July 4, 2009, Appellant was with his uncle, Levi Battley (Victim) at Woodland Apartments in St. Louis County. For reasons unknown, Appellant attacked and killed Victim by striking him repeatedly in the head with a hammer. Witnesses testified to observing Appellant striking Victim in the head with a hammer for 30 to 40 seconds, until Victim's face was unrecognizable. At least one such witness called the police.
*138 St. Louis County Police Officers James Grace (Grace) and Dario Hayes (Hayes) responded to the scene. They encountered Appellant walking in the courtyard. The officers ordered Appellant to stop, and Appellant fled. The officers gave chase, but lost sight of Appellant.
As the officers searched for Appellant, Daymon McGhee (McGhee) approached the officers seeking help. McGhee told the officers an individual had just attempted to carjack him. McGhee pointed out his vehicle to the officers, who observed Appellant sitting therein. Appellant exited McGhee's vehicle and fled; the officers once again gave chase, Grace on foot and Hayes in their police vehicle. Hayes caught up with Appellant first, and, with the assistance of a nearby civilian, subdued the struggling Appellant.
Appellant was charged via information in lieu of indictment with five offenses: Murder in the Second Degree, with Armed Criminal Action stemming therefrom; Attempted Kidnapping, with another Armed Criminal Action stemming therefrom; and Resisting Arrest for a Felony. At trial, witnesses testified to observing Appellant striking Victim repeatedly with a hammer that morning. A medical examiner testified Victim's body had tested positive for alcohol and cocaine. McGhee testified he was at the apartment complex that day to pick up a friend. As he was parking his car, Appellant, covered in blood and wielding a hammer, jumped in and commanded him to drive. McGhee put the car in park, grabbed his keys, and fled, finding the two officers soon after.
Appellant took the stand during trial. He testified he had been living with Victim, his uncle, for three years prior to the incident and drove Victim places on occasion. Appellant denied killing Victim. He offered instead this account: That morning, Victim and Appellant had come to the Woodland Apartments so Victim could pay off a drug debt. Appellant testified Victim exited the car alone, with an open beer and a black bag containing money; Appellant waited in the car for him to return. After a half hour passed, Appellant said he grew concerned and went to look for Victim. He discovered Victim on the ground, grievously wounded and not breathing. Appellant then went in search of aid, encountering a man in a white Impala, whom he asked for help. However, this man (presumably McGhee), upon seeing the blood on Appellant's shirt from an earlier attempt to aid Victim, refused to help and fled. Appellant testified he returned to Victim's side, where soon after police officers arrived and began pummeling him. Appellant stated this attack by the officers was the real reason he fled.
On cross-examination, Appellant admitted to telling officers a different story that morning after being arrested. Appellant initially told the officers he and Victim had been together, visiting an apartment in the complex and smoking crack cocaine therein. As they left, six men armed with various weapons, one of which was a hammer, stopped them and demanded Victim pay for the crack cocaine. Three of these men restrained Appellant while the other three attacked Victim. Appellant admitted this initial story he told to police was untrue, he had made it up in the course of his interrogation, and his testimony at trial was what had actually happened.
During the instruction conference, Appellant offered a voluntary manslaughter instruction as a lesser included offense of second-degree murder. He also offered an attempted false imprisonment instruction as a lesser included offense of the attempted kidnapping charge, which stemmed from his interaction with McGhee. The trial court refused both instructions. The jury *139 found Appellant guilty on all counts as charged. This appeal follows.
Points Relied On
Appellant makes two claims on appeal. First, he claims the trial court erred in refusing to instruct the jury on voluntary manslaughter as a lesser included offense of second-degree murder. Second, Appellant claims the trial court erred in rejecting his proffered instruction for attempted false imprisonment, as a lesser included offense of attempted kidnapping.
Standard of Review
Claims of instructional error are reviewed de novo. State v. Julius, 453 S.W.3d 288, 299 (Mo. App. E.D. 2014). "Instructional error requires reversal when the error is so prejudicial that it deprived the defendant of a fair trial." State v. Sanders, 522 S.W.3d 212, 215 (Mo. banc 2017) (internal citations and quotation marks omitted). Error that does not result in prejudice that materially affects the merits of a defendant's case does not require reversal. Julius, 453 S.W.3d at 299. The trial court's rejection of a proffered jury instruction will be affirmed if it was correct for any reason. Sanders, 522 S.W.3d at 215.
Discussion
Point I
Appellant claims that the trial court was required to instruct the jury on voluntary manslaughter, as a lesser included offense of second-degree murder. Voluntary manslaughter is a lesser included offense of second-degree murder; however, it is not a nested lesser included offense, meaning that the trial court is not obligated to accept the instruction upon the defendant's request. State v. Payne, 488 S.W.3d 161, 164 (Mo. App. E.D. 2016) ; see also State v. Jackson, 433 S.W.3d 390 (Mo. banc 2014). While lesser included charges generally have fewer elements than their respective greater offenses, "[d]istinctively, voluntary manslaughter includes an additional element not present in first-degree or second-degree murder-that is, the presence of sudden passion arising from adequate cause." State v. Edwards, 530 S.W.3d 593, 605 (Mo. App. E.D. 2017). In order to raise the issue of, and be entitled to instruct on, voluntary manslaughter, the defense must inject into the trial the presence of sudden passion arising from adequate cause. Section 565.023.2.[1] The burden then shifts to the state to prove beyond a reasonable doubt that the defendant did not commit the killing due to a sudden passion arising from adequate cause. Edwards, 530 S.W.3d at 606. If the state's case presents no evidence that could establish both sudden passion and adequate cause, then the defendant himself must present such evidence. Id."Adequate cause" is defined as "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control"; "sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(1); Section 565.002(15).
In his brief, Appellant claims there was sufficient evidence presented at trial of sudden passion arising from adequate cause to warrant the voluntary manslaughter instruction. He points to: (1) the murder being committed with a common household item, a hammer, which tends to *140 show the killing was spontaneous and unplanned; (2) the location of the murder, outside of an apartment building in broad daylight where witnesses would be likely to observe, showing again a lack of cogent planning on Appellant's part; and (3) the presence of cocaine and alcohol in the body of Victim at the time of his killing, from which a jury may infer Victim was, to quote Appellant's brief, "not acting normally."
Before considering Appellant's particular points, we highlight an important detail: In Appellant's brief, he observes, "The present case is unique in that the State presented virtually no evidence of a motive for the killing of [Victim]." The state is not required to prove a motive, as "motive" is not an element of second-degree murder. See, e.g. , State v. Myszka, 963 S.W.2d 19, 23 (Mo. App. W.D. 1998). Appellant does not claim otherwise. Rather, Appellant makes this observation to suggest the field was clear for the jury to have inferred any motive for the killing they might have desired, up to and including an adequate cause legally sufficient to produce a sudden passion in Appellant.
Appellant is correct that the record is mostly void of any evidence of a motive for Victim's killing. He is, however, mistaken about how this affects his argument. Let us assume for a moment Appellant is correct, and the evidence shows the killing took place in a sudden passion. This is only half the battle; the law clearly requires evidence of a sudden passion and adequate cause before he is entitled to an instruction on voluntary manslaughter. To the extent that "motive" and "cause" may be used synonymously in this context, Appellant more or less concedes that neither the State's nor his own evidence suggested the cause from which his sudden passion arose. And, as we have already established, "in the event the State's case-in-chief excludes any evidence of sudden passion arising from adequate cause, it is then incumbent upon the defendant to inject evidence that he or she acted under the influence of sudden passion arising from adequate cause." Edwards, 530 S.W.3d at 606.
The sum total of Appellant's defense at trial was that he did not commit the killing. Of course, one cannot testify as to what caused one to commit a killing one did not commit, and so Appellant offered no evidence himself of the cause of Victim's killing. And without evidence of the cause, it follows that the jury cannot evaluate whether or not that cause would "produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Section 565.002(1).
We turn now to the particular facts to which Appellant points. As to (1) and (2), the choice of weapon and the time and location of the killing, the most that can be said of them is they might, in some strained way, provide indicia of sudden passion. However, a more reasonable leap of inference would be to say they indicate a lack of planning, or premeditation, on the part of Appellant. This is likely the reason the State did not charge the offense as first-degree murder, as these facts do not indicate premeditation, an element it would have been required to prove. See Section 565.020.1.
As to (3), Appellant does not precisely articulate the connection between Victim's possible intoxication at the time of his killing and a basis for a voluntary manslaughter instruction. Surely he does not mean to say that the mere fact an individual is intoxicated may, in itself, mitigate or excuse someone for a brutal murder. Appellant offers, and we can find, no support in law for this proposition. Perhaps Appellant means to imply Victim may *141 have, in his intoxicated state, provoked Appellant in some way. But again, even assuming Victim provoked Appellant, without knowing how he provoked him, there is no way to evaluate whether the provocation was legally adequate, regardless of how angry Appellant apparently became as a result. "A heated temperament alone is insufficient to prove an individual was overcome with sudden passion arising out of adequate cause." Meiners v. State, 540 S.W.3d 832, 838 (Mo. banc 2018).
The trial court found no basis in the evidence to support an instruction on voluntary manslaughter; nor do we. The trial court did not err in rejecting Appellant's voluntary manslaughter instruction. Point I is denied.
Point II
In his second point, Appellant claims the trial court erred in rejecting his instruction for attempted false imprisonment. Appellant asserts he was entitled to have the trial court accept the instruction as a matter of right, because attempted false imprisonment is a nested lesser included offense of attempted kidnapping.
Appellant was charged by information in lieu of indictment with attempted kidnapping. The information read:
... Jason Ayansu, in violation of Section 564.011, RSMo, committed the class C felony of attempted kidnapping, punishable upon conviction under Sections 564.011 and 558.011, RSMo, in that on or about July 4th, 2009 at 10:35 AM, at 10047 Neville Walk, in the County of St. Louis, State of Missouri, the defendant got into Daymon McGhee's car with a hammer and another object that he put to Daymon McGhee's head and told him to drive and such conduct was a substantial step toward the commission of the crime of kidnapping Daymon McGhee and was done for the purpose of committing such kidnapping.
At the close of evidence, the State submitted an instruction on the attempted kidnapping charge. This instruction defined the offense of kidnapping as "unlawfully remov[ing] another without his or her consent from the place where he or she is found for the purpose of facilitating the commission of any felony or flight thereafter." Appellant's instruction for attempted false imprisonment was rejected.
A trial court's obligation to instruct on lesser offenses is codified in Section 556.046, RSMo Supp. 2002. Lesser included offenses are defined in sub-section 1 of same. Sub-section 1 reads:
1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when:
(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
(2) It is specifically denominated by statute as a lesser degree of the offense charged; or
(3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.
Lesser included offenses under subsection (1) are dubbed "nested lesser included offenses," and the trial court's obligation to instruct on them has recently been explained by the Missouri Supreme Court in State v. Jackson, 433 S.W.3d 390 (Mo. banc 2014). In essence, Jackson holds that when a defendant timely proffers a proper instruction on a nested lesser included offense of an offense for which he is charged, the trial court is obligated to instruct the *142 jury on it. Id. at 401-02.[2]
The issue then becomes whether attempted false imprisonment is a nested lesser included offense of attempted kidnapping. The test for determining whether an offense is a nested lesser included offense of another is fairly straightforward: compare the elements of the two offenses, and determine whether all of the elements of the lesser offense are contained in the greater. State v. Barnard, 972 S.W.2d 462, 465 (Mo. App. W.D. 1998). If they are, such that the greater offense is impossible to commit without also necessarily committing the lesser offense, then the lesser offense is a nested lesser included offense. State v. Derenzy, 89 S.W.3d 472, 474 (Mo. banc 2002). The offenses are compared on the elements contained in their respective statutes, without regard to the circumstances present in any particular case. Barnard, 972 S.W.2d at 465 ; Derenzy, 89 S.W.3d at 474.
Appellant was charged with attempted kidnapping under Sections 564.011 and 565.110. "[T]he crime of attempt has two elements: (1) the purpose to commit the underlying offense, and (2) the doing of an act which is a substantial step toward the commission of that offense." State v. Bonich, 289 S.W.3d 767, 771 (Mo. App. S.D. 2009) (internal quotation marks omitted). Kidnapping may be effectuated via two alternative methods: either confining or removing a person, in addition to being for one of the unlawful purposes stipulated by the statute. Section 565.100; State v. Porter, 241 S.W.3d 385, 390 (Mo. App. W.D. 2007). In contrast, false imprisonment cannot be effectuated by removal, only by confinement (or, as the statute phrases it, "restrain[t]"). Section 565.130. The statute does not require that an individual do so in furtherance of an unlawful purpose. Id.
In their respective briefs, the State points out, and Appellant concedes, that an analysis of whether false imprisonment may be a nested lesser included offense of kidnapping has already been done, in State v. Seddens, 624 S.W.2d 470 (Mo. App. W.D. 1981). The Seddens court concluded, and we agree, "that all elements of false imprisonment are included in the offense of kidnapping, provided the kidnapping charge is predicated on unlawful confinement and not on unlawful removal." Id. at 473. Thus, only when the kidnapping is effectuated by confinement can false imprisonment be considered a nested lesser included offense.
As a basis for his claim, Appellant does not pray this Court find differently from the Seddens court. Rather, Appellant claims that, because the State was not required to elect whether to premise the attempted kidnapping charge on either confinement or removal until they submitted the case to the jury, and the information charging Appellant with the offense was ambiguous as to whether the kidnapping was premised on either removal or *143 confinement, the trial court should have, notwithstanding Seddens and the State's jury instruction, accepted Appellant's proffered instruction on attempted false imprisonment.
In support of this contention, Appellant cites State v. Collins, 154 S.W.3d 486 (Mo. App. W.D. 2005). Based upon this case, Appellant argues that it was an error for the trial court to reject his instruction based on a comparison with the State's instruction, because, as he states in his brief, "it is not the jury instruction that matters, but how a defendant is charged in the information." Appellant does not wholly misstate the holding of Collins, but his reliance is nonetheless misplaced.
In Collins, the appellant claimed the trial court erred when it instructed the jury on an offense that was not encompassed by the offense charged in the charging document. Id. at 495. The court agreed and reversed his conviction, holding that due process prevents a criminal defendant from being convicted of an offense that was neither explicitly charged, nor included in the charged offense. Id. at 494. The court noted that even though the offense instructed on, third-degree assault, was a lesser included offense of the offense charged, first-degree assault, because the instructions "did not involve the same criminal conduct" as was alleged in the charging document, one could not be said to include the other. Id. at 495.
Appellant does not claim the conduct described in the State's instructions were not included within the scope of the original charging document. Rather, he claims the original charging document was ambiguous as to whether the attempted kidnapping was premised on removal or confinement. This is an important distinction, because to the extent Appellant is correct the charge was ambiguous as to whether the State would opt for removal or confinement, the charging document encompassed either, or both, methods of effecting kidnapping.
Appellant nonetheless premises his argument on this ambiguity in the charging document, claiming that, because such ambiguity exists, the trial court must then resolve any doubt in favor of the defendant and conclude that attempted false imprisonment is a nested lesser included offense of attempted kidnapping. In support, he quotes from State v. Williams:"Doubts concerning whether to instruct on a lesser included offense should be resolved in favor of including the instruction, leaving it to the jury to decide." 313 S.W.3d 656, 660 (Mo. banc 2010). Appellant's error here is fairly self-evident: While doubts in favor of instructing on lesser included offenses should be resolved in the favor of a defendant, no such benefit of the doubt is given when determining whether an offense is a lesser included offense in the first place. The Williams court was discussing the standard for the trial court's evaluation of evidence supporting an instruction on a lesser included offense. Id. Whether or not the offense is a lesser included offense is a question of law, done by comparing the statutory elements of the charged offense with those of the purported nested lesser included offense. See Barnard, 972 S.W.2d at 465. It should be noted also that, at least in the context of nested lesser included charges, this language from Williams and its lineage has largely been deprecated by the holding of Jackson, as there should no longer be any doubt that a defendant is entitled to instruct on a nested lesser included offense of the offense charged. Jackson, 433 S.W.3d at 399.
Significantly, Appellant does not complain directly that he was prejudiced by the failure of the charging document to specify whether or not the State would *144 elect to prove attempted kidnapping via confinement or removal; nor could he. If Appellant believed the information in lieu of indictment by which he was charged did not allege the details of the offense sufficiently for him to prepare a defense, then he should have moved for a bill of particulars. Rule 23.04.[3] "Failure to file a motion for a bill of particulars constitutes a waiver of the right to later complain about a lack of detail in an information." State v. Musil, 935 S.W.2d 379, 382 (Mo. App. S.D. 1996).
Under Missouri law, kidnapping can be effectuated by either the removal or confinement of the victim. Porter, 241 S.W.3d at 390. "If the State charges both unlawful removal and unlawful confinement, it is then required to elect either removal or confinement to submit to the fact finder." Id. This is precisely what the State did in the instant case, opting to submit removal. As discussed above, when the kidnapping is based on removal, and not confinement, false imprisonment is not a nested lesser included offense. Seddens, 624 S.W.2d at 473. We cannot convict the trial court of error for refusing Appellant's attempted false imprisonment instruction. Point II is denied.
Conclusion
The judgment of the trial court is affirmed.
Lawrence E. Mooney, J., and James M. Dowd, J., concur.

All statutory references are to RSMo 2000 unless otherwise indicated.

It should be noted that regardless of whether Appellant's particular claim of error is meritorious, Appellant's rejected Instruction F still does not pass muster. The rejected instruction directs the jury to consider whether his actions constitute an attempt to commit the offense of false imprisonment; however, the final line of the instruction reads: "As used in this instruction, the term 'substantial step' means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of felonious restraint. " (Emphasis added). This confusing and incorrectly worded jury instruction is grounds alone to reject Appellant's instruction and affirm the trial court. Sanders, 522 S.W.3d at 217 ; see also Edwards, 530 S.W.3d at 607 ("Pursuant to Sanders , the trial court is not obligated to correct Defendant's proffered instructions."). However, we still review the substance of Appellant's claim ex gratia.

All rule references are to Mo. R. Crim. P. 2017.