

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED106689 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 15SL-CR07824-01 |
| | ) | |
| STASSIE GREER, | ) | Honorable Stanley J. Wallach |
| | ) | |
| Appellant. | ) | Filed: October 01, 2019 |

### OPINION

Stassie Greer ("Greer") appeals from the judgment and sentence of the trial court following a jury verdict convicting him of first-degree murder, first-degree robbery, and armed criminal action. On appeal, Greer challenges the trial court's denial of his proffered jury instruction based on Missouri Approved Instructions—Criminal ("MAI-CR") 3d 310.02 (2016)[1] regarding eyewitness identification. We affirm.

### Background

The State charged Greer with one count of the class A felony of murder in the first degree, one count of the class A felony of robbery in the first degree, and two related counts of

---

[1] While the parties sometimes cite to MAI-CR 4th 410.02 (2017), MAI-CR 3d 310.02 (2016) applies to crimes committed, as here, prior to January 1, 2016, and thus the 2016 version is proper. There are no substantive differences between the versions other than the renumbering. *See* MAI-CR 4th 410.02, Notes on Use 1.

armed criminal action, stemming from the November 28, 2015, shooting death of Sharae Bradford (Victim). The following evidence was adduced at the November 2017 trial.

Daniel McCain ("McCain") testified to the following. He spent time with Victim at her apartment on the afternoon of November 28, 2015. While McCain was there, he witnessed Victim use her black iPhone. They discussed that she had arranged an exchange of $1,700.00 for sex with a man she had met on Facebook who identified himself as James Cool, and Victim showed McCain a picture of the man posted on Facebook. McCain overheard a telephone conversation between Victim and a man, in which the man said he was on his way over, and then Victim told McCain to leave because James Cool was coming over. As McCain was leaving at around 4:45 p.m., he passed a man he recognized as the man in the picture on James Cool's Facebook page. McCain was concerned and both texted and called Victim. McCain and some friends went to Victim's apartment at approximately 5:50 p.m., and they discovered Victim was dead.

Victim died of a gunshot wound to the back of the head. Based on James Cool's Facebook page, police identified Greer as a possible suspect, and McCain later identified the man he had seen in Victim's building as Greer, stating he was 100% sure it was the same man. McCain identified Greer in court as the person he had seen in Victim's building. Additionally, surveillance video from Victim's apartment building showed a man later identified as Greer enter the building at 4:52 p.m. and leave at approximately 5:35 p.m. During the subsequent police search of Victim's apartment, police discovered Victim's black iPhone was missing, and they discovered two used condoms. Police later found a black iPhone later identified as Victim's during a search of Greer's residence. Greer's DNA was found inside the two condoms discovered at the scene of the crime. Moreover, while marijuana was found in Victim's

2

bedroom, a toxicology report showed no illegal substance in Victim's body.  Greer does not challenge the sufficiency of the evidence supporting his conviction.

During the jury-instruction conference, the trial court accepted the State's proposed eyewitness instruction with modifications to eliminate the paragraphs for eyesight, the weather, intoxication, or fatigue of the person making the identification.  The defense offered an eyewitness instruction with no modifications, which the trial court rejected.  After the trial, the jury returned a verdict of guilty on all charges.  On the charge of first-degree murder, the trial court sentenced Greer to life in the Missouri Department of Corrections without the possibility of parole, consecutive to twenty-year sentences for each of the remaining counts of first-degree robbery and armed criminal action, which were concurrent to each other.  This appeal follows.

Discussion

In his sole point on appeal, Greer argues the trial court erred in refusing his proffered unmodified instruction patterned on MAI-CR 3d 310.02, and in submitting instead a modified instruction eliminating language stating the jury could consider the witness's eyesight, weather conditions, and intoxication, fatigue, illness, injury, or other impairment in considering the reliability of McCain's identification of Greer, resulting in prejudice.  We disagree.

"This Court reviews de novo a trial court's decision whether to give a requested jury instruction." *State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018) (citation omitted).[2]  We will

---

[2] Initially, we note that there is some confusion between the parties as to our standard of review.  When the proffered jury instruction is not mandated or approved by the Missouri Approved Instructions ("MAI"), then we review the trial court's decision to submit or refuse the instruction for an abuse of discretion.  *See State v. Edwards*, 530 S.W.3d 593, 602 & n.3 (Mo. App. E.D. 2017).  When, however, the challenged proffered instruction is approved or mandated by the MAI, then our review of the trial court's decision is de novo.  *See id.*  Here, there was an applicable, approved instruction that was mandated by the Missouri Supreme Court, and thus our review is de novo.  *See State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018); *see also* Missouri Supreme Court Order, *In re: Additions to MAI-CR 3d, ¶ 2* (April 2, 2015) (directing that MAI-CR 310.02 "shall be used and followed on and after January 1, 2016"); *see also* Rule 70.02(b) ("[w]henever Missouri Approved Instructions contains an instruction applicable in a particular case …, such instruction shall be given").

3

reverse for instructional error only when the error is so prejudicial that it deprives the defendant of a fair trial, viewing the evidence in the light most favorable to the defendant. *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002); *State v. Edwards*, 530 S.W.3d 593, 604 (Mo. App. E.D. 2017). We presume prejudice from the trial court's failure to give a mandatory instruction, unless the State clearly establishes the error did not result in prejudice. *State v. Seay*, 256 S.W.3d 197, 201 (Mo. App. E.D. 2008). Prejudice exists when there is a reasonable probability that the verdict would have been different without the error. *State v. Davis*, 203 S.W.3d 796, 798 (Mo. App. W.D. 2006).

Rule 28.02(c) mandates the exclusive use of the MAI-CR whenever there is an applicable instruction. *See State v. Davenport*, 174 S.W.3d 666, 668 (Mo. App. S.D. 2005) (trial court errs if it does not instruct jury in compliance with MAI-CR). For cases involving eyewitness testimony, MAI-CR 3d 310.02 instructs that the jury should evaluate eyewitness identification with particular care, and it provides a list of 17 factors for the jury to consider, in addition to the overall credibility of the witness, in order to determine whether an identification made by a witness is reliable or mistaken. While MAI-CR 3d 310.02 lists a total of 17 factors, the Notes on Use state that "only those factors that apply to the evidence presented at trial" should be included in the instruction.

Here, the defense offered an unmodified instruction ("Instruction A") patterned on MAI-CR 3d 310.02 with all 17 factors included. However, after considering the evidence admitted at trial, the trial court submitted to the jury a modified version of MAI-CR 3d 310.02 eliminating three factors: namely, the witness's eyesight, the weather conditions at the time the witness viewed the person in question, and any intoxication, fatigue, illness, injury, or other impairment of the witness at the time the witness viewed the person in question. Greer argues on appeal that

4

because there was a marijuana cigarette discovered in Victim's bedroom, this evidence created a reasonable inference that McCain smoked marijuana prior to his eyewitness identification, which would make the question of his intoxication or impairment relevant. Greer further argues that a witness's eyesight is always relevant to the jury's determination of the reliability of an identification. Greer concedes that the weather conditions at the time of McCain's indoors eyewitness identification were "less relevant."

Our review of the record shows the jury was properly instructed. The trial court is required to follow the Notes on Use, which here provides that only the factors "that apply to the evidence presented at trial" should be included in the instruction. *See* MAI-CR 3d 310.02, Notes on Use 1; *Davenport*, 174 S.W.3d at 668. Jury instructions must be based on substantial evidence and the reasonable inferences therefrom, and courts cannot supply missing evidence or grant unreasonable, speculative, or forced inferences. *Bruner*, 541 S.W.3d at 538. Although Greer speculates on appeal that McCain *could* have been smoking the marijuana found in Victim's bedroom, there was no testimony or other evidence presented at trial actually linking McCain to the marijuana. While we view the evidence in the light most favorable to Greer's defense, after-the-fact speculation is not evidence, and jury instructions cannot be based on speculative or forced inferences not supported by the evidence introduced at trial. *See id.* (self-defense instruction not appropriate when defendant did not testify he feared for his life, and courts may not speculate as to defendant's possible fear without testimony of such). Rather, the only evidence about the marijuana during trial linked it to Greer, and, as such, it was not a reasonable inference from the evidence that McCain had smoked marijuana before viewing Greer in the hallway outside Victim's apartment.

5

Similarly, while Greer argues that a witness's eyesight is always a proper consideration for the jury in determining the reliability of the identification evidence, there was no evidence presented at trial calling into question the accuracy of McCain's eyesight. It was not error for the trial court to refuse an instruction based on after-the-fact speculation not supported by evidence presented at trial. *See id.* Because there was no evidence presented at trial about McCain's eyesight, it was not a proper factor to include in the instruction regarding eyewitness identification, as explicitly stated in the Notes on Use. *See* MAI-CR 3d 310.02, Notes on Use 1 ("[u]se only those factors that apply to the evidence presented at trial"); *see also Bruner*, 541 S.W.3d at 538.

The trial court here did not err in refusing Greer's proffered Instruction A. Point denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Robin Ransom, J.

James M. Dowd, P.J., and
Gary M. Gaertner, Jr., J., concur.

6